**KEVDZIJA, Appellee,**

v.

**KEVDZIJA et al., Appellants.**

[Cite as *Kevdzija v. Kevdzija*, 166 Ohio App.3d 276, 2006-Ohio-1723.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85896.

Decided April 6, 2006.

278

■■■■■■■■■■

Alice Rickel & Associates, Alice Rickel, and Denise Cook, for appellee.

Gerald R. Walton & Associates, Gerald R. Walton, and John J. Schneider, for appellants.

David J. Mack, guardian ad litem.

---

KARPINSKI, Judge.

{¶ 1} Appellant, Joseph Kevdzija, appeals multiple rulings of the trial court in his divorce from Mary Kevdzija. Joseph and Mary were married on October 24, 1988, and had three children, all of whom were minors at the time of the divorce.

{¶ 2} The parties agreed to restrict the formal hearing to the issue of the divorce only and to submit the remaining issues for the court to decide on their briefs. After the court made its rulings, Joseph took issue with the majority of the trial court's findings of fact and conclusions of law. He timely appealed, stating 16 assignments of error. The first states:

I. The lower court abused its discretion and erred when it failed to hold an evidentiary hearing for the purposes of taking testimony and admitting exhibits into evidence regarding the parties' separate and marital property interests, the parties' income, education and employment capabilities and the contemporaneous opinion of the guardian ad litem regarding the allocation of parental rights and responsibilities.

■■ {¶ 3} In his first assignment of error, Joseph claims that, despite his stipulation that the trial court should decide the division of marital assets using only the documents he and Mary submitted with their briefs, the court erred in deciding the matter this way.

{¶ 4} By agreement of the parties, the trial court was to provide "a Judgment Entry for Divorce in this matter based upon those briefs and proposed entries." In his appellate brief, Joseph states, however, that he "believed that the trial court would scrutinize the parties' trial brief exhibits and arrive at a considered and balanced result."[1] If the court erred in failing to hold an evidentiary hearing

---

1. He concedes that he agreed to have the court rule only on the briefs because he "was seeking to avoid the expense of a trial."

on these matters, it was clearly invited error. Accordingly, the first assignment of error is overruled.

{¶ 5} We will discuss assignments of error two, three, and 16 together:

II. The lower court's findings of fact and conclusions of law are arbitrary and against the manifest weight of any admitted or stipulated evidence before the court.

III. If the exhibits submitted with the parties' respective final trial briefs were properly before the lower court as admitted evidence, then, nonetheless, the trial court's determination of the separate property interests of the defendant was contrary to law and the manifest weight of the evidence.

XVI. Defendant/appellant by agreeing to submit proposed judgment entries to the court with trial briefs and attached exhibits did not waive his right to insist that the trial court's findings of fact and conclusions of law be supported by the preponderance of admitted evidence before the trial court.

{¶ 6} An appellate court reviews the trial court's decision in domestic matters under an abuse-of-discretion standard.

A trial court exercises broad discretion when making an equitable division of marital property and awarding spousal support. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218 [5 OBR 481], 450 N.E.2d 1140. Therefore, a trial court's decision on these matters will not be overturned absent an abuse of discretion. Id. An abuse of discretion amounts to more than a mere error of judgment, but implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Id. at 219 [5 OBR 481], 450 N.E.2d 1140. Appellate "review of the trial court's classification of property as marital or separate is limited to whether that determination is supported by the manifest weight of the evidence." *Marcum v. Marcum* (1996), 116 Ohio App.3d 606, 613, 688 N.E.2d 1085.

*Bell v. Bell*, Miami App. No. 2002 CA 13, 2002-Ohio-5542, 2002 WL 31317322, ¶ 11.

{¶ 7} As a threshold issue, we must describe the condition of the record. The court held a brief hearing on the parties' actual grounds for divorce; that transcript is included in the record on appeal. The remainder of the record before us consists of the pleadings, several support and visitation motions, the depositions of the parties, an expert report filed by Mary, and the multiple briefs and responses filed for the court's consideration in making its decision on the final divorce decree. The record also contains the trial court's findings of fact and conclusions of law and related motions. Additionally, the parties stipulated

that the parenting order could be adopted by the court,[2] but reserved for the trial court's decision any issues therein affecting child support only.

{¶ 8} Submitted with Joseph's trial brief were over 206 numbered but loose pages. His brief occasionally refers to supporting documents by name, but for the most part, never indicates where these documents are located.[3] In a few circumstances, the documents are too poor a copy to be completely readable and some are unlabeled. Nowhere in the typed trial brief are there any citations of specific pages. Mary also submitted documents, but in an indexed and organized form.[4] From an appellate perspective, we find that the procedure the lower court followed has left the record in a shambles. Because no one complained of this bizarre procedure, however, we will presume regularity for the case at bar.

{¶ 9} In what appears to be a Herculean effort, the trial court prepared and filed a decision granting the divorce and issuing orders on the remaining issues. In response to Joseph's request, the court issued findings of facts and conclusions of law. Joseph filed with this court 16 assignments of error and the same loose, disorganized documents that the trial court so heroically dealt with in lieu of a trial.

{¶ 10} In his second assignment of error, Joseph objects to the trial court's decision as stated in the court's findings of fact and conclusions of law. The disarray in which Joseph presented his documentation to the trial court, however, precludes a thorough review of the record. First, we note that Joseph's attachments to his trial brief violate Cuyahoga County Loc.R. 8(A), which requires motions filed with the court to be "securely bound at the top." Joseph's documents were attached to his trial brief by only a rubber band.

{¶ 11} Additionally, these attachments, while numbered, are not indexed or named in the table of contents or otherwise organized or tabbed for the court. In his first trial brief, Joseph often refers to a document without providing the court with any guidance as to where to find it in the over 200 loose pages he supplied with his first trial brief.

{¶ 12} In his second trial brief, Joseph disputes arguments raised in Mary's trial brief. Although he refers to tax returns and other documents, he made no effort whatsoever to direct the trial court to any of them in his attachments.

---

2. The trial court attached a copy of this parenting order to its findings of fact and conclusions of law as Exhibit A.

3. A few handwritten interlineations providing page numbers were added.

4. We note that none of the attachments to the trial briefs is authenticated. Because the parties stipulated to a ruling on the briefs, however, we presume the validity of these attachments as being what they purport to be.

Joseph complains that "[d]espite submitting in excess of one hundred pages of documentary exhibits with Defendant's Brief of 12/2/2004, it is clear that the trail [sic] court did not consider the same. For instance, the Findings of Fact and Conclusions of Law the court state at various points that [Joseph] failed to submit documentation, which he clearly did submit with his Trial Brief."

{¶ 13} A review of the trial court's findings of fact and conclusions of law reveals, however, that although Joseph submitted numerous papers, none of them supplied the information the court needed. We find not one instance in which the court erred in finding that Joseph lacked documentation. The court correctly noted, for example, that Joseph failed to provide documentation to trace the proceeds of the sale of the West 93rd Street house to the down payment of the marital home. The court also noted that Joseph failed to document alleged expenses and repairs that he claimed increased the value of some of the properties. Nor did Joseph document what he did with the monies he withdrew from the securities funds he had during the marriage.

{¶ 14} In assignment of error six, Joseph specifically argues that he did indeed provide documentation of the amount of money he had to pay for the children's health insurance. When he argued this issue in his trial brief, however, Joseph never referred the court to this document. Instead, he referred the court to checks that he attached to a previous motion and claimed that he had to pay over $500 in health-insurance premiums for the family. Later in his trial brief, he complains of the cost of providing Mary with health insurance and refers the court to attachment 66. It is true that page 66 of his loose pages is a copy of a bill for health insurance, and it states that the amount for the children's coverage is $176.55. However, at the point that an exhibit is relevant to an argument, it is counsel's job to specify the location of that exhibit; it is not the court's responsibility to ferret out from a loose pile of papers the appropriate documents to support each argument or to return to an earlier argument when the location is subsequently identified. Unless counsel organizes and correctly cites the document it claims supports an argument, a court could properly conclude that the argument is not supported by evidence.

{¶ 15} A loose stack of often unlabeled papers submitted to the court without any attempt to provide a way to retrieve individual documents for specific arguments does not constitute supporting exhibits. It is comparable to presenting a box of papers in a trial and waving to them in an argument, but never pulling one out and looking at it. Although the trial court agreed to proceed in this haphazard manner, this court cannot consider this pile of papers, to which Joseph makes vague allusions, a proper supporting record. The only items before this court that could be considered supporting exhibits are those whose locations are specifically provided at the relevant moment in an argument.

## A. Ownership of the Marital Home

{¶ 16} Joseph's complaint about the trial court's finding that a portion of the marital home was not his separate property is unpersuasive because of the disorganized and unsupportive documentation purporting to be evidence. As the trial court noted in its findings of fact and conclusions of law:

> Defendant alleged a separate property interest in the marital residence based upon the proceeds received from the sale of a property located at W. 93rd Street, Cleveland, Ohio. * * * The Court finds that Defendant provided *no* documentation tracing the proceeds received from the sale of the property located at W. 93rd Street to the marital residence. Ohio Revised Code § 3105.171(A)(6)(b).

Ironically, Joseph argues that in making this ruling, the court relied on facts not properly in evidence. This argument lacks merit. Although much of the documentation attached to the briefs is not authenticated, the parties agreed, through counsel, to permit the court to rely on their briefs and attachments in order to decide the disputed issues. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Bitter v. Missig* (1995), 72 Ohio St.3d 249, 254, 648 N.E.2d 1355. Moreover, he failed to object at the time and thus waived his right to appeal this issue.

{¶ 17} Even with the documents defendant submitted to the court for its review, moreover, Joseph failed to provide anything that would prove the amount of money supposedly used for the down payment of the marital home. We cannot rely on scattered, unauthenticated documents for proof that the money he received from the sale of one house was actually used for the down payment of another. Nor can we rely solely on his affidavit for proof of the amount he used from that sale for the down payment of the marital home. Self-serving testimony, without the opportunity for cross-examination, is inherently unreliable without corroborating evidence.

{¶ 18} The trial court relied on documents the parties provided in making its decision. Because there was no adequate documentation to show any separate interest in the marital home, the court had no alternative but to declare it entirely marital property.

## B. Determining the Value of Other Real Property

{¶ 19} Joseph also challenges the trial court's basis for determining the value of the properties he owns. He claims that the trial court erred in the method it used to determine the value of his separately owned property prior to the marriage. Although he is correct that the trial court erred in the method it

used to calculate the value of the separate property, the court did not err in the manner Joseph claims.

{¶ 20} R.C. 3105.171 defines separate property as follows:

(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

* * *

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

* * *

(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

{¶ 21} In contrast, the statute defines marital property as follows:

(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and *that was acquired by either or both of the spouses during the marriage;*

* * *

(iii) Except as otherwise provided in this section, all *income and appreciation on separate property,* due to the *labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;*

* * *

(b) "Marital property" does not include any separate property.

(Emphasis added.) R.C. 3105.171(A)(3).

{¶ 22} Joseph claims that he owned several properties prior to the marriage that he purchased at sheriff's auctions and estate sales for amounts below the auditor's valuation of them. In their trial briefs, the parties disagreed over the monetary value of the properties at the time of the marriage.[5] Mary claimed that the actual sale value should be assigned as the value at the time of the marriage, while Joseph argued that the auditor's valuation at the time of the marriage was

---

5. The court's exhibit A, attached to its findings of fact and conclusions of law, contains the parties' stipulation to the present value of these properties.

the proper valuation amount. In a Solomon-like decision, the trial court chose to use "the average of the purchase price of the property and the tax appraisal value of the property at the date of the parties' marriage."

{¶ 23} A trial court has some latitude in the means it uses to determine the value of a marital asset. "When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method. *Clymer v. Clymer* (Sept. 21, 2000), Franklin App. No. 99AP–924 [2000 WL 1357911]; *Kell* [*v. Kell* (Dec. 14, 1993), Ross App. No. 92CA1931, 1993 WL 525003]. However, the court may not simply adopt an intermediate figure without a supporting rationale when the parties present substantially different valuations of an asset. *Patterson v. Patterson* (Dec. 14, 1998), Adams App. No. 97CA654 [1998 WL 880494]." *Covert v. Covert*, Adams App. No. 03CA778, 2004-Ohio-3534, 2004 WL 1486093, ¶ 29.

{¶ 24} The Ohio Supreme Court recently ruled that when a property is purchased in an arms-length transaction, the sale price is the best evidence of value of the property:

Indeed, as this court has often observed, "[a]ppraisals based upon factors other than sales price are appropriate for use in determining value only when no arm's-length sale has taken place, or where it is shown that the sales price is not reflective of the true value." * * * *Columbus Bd. of Edn. v. Fountain Square Assoc., Ltd.* (1984), 9 Ohio St.3d [218,] 219, 9 OBR 528, 459 N.E.2d 894. See, also, *N. Olmsted Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1990), 54 Ohio St.3d 98, 561 N.E.2d 915, in which we held that "[i]n the absence of evidence of a recent arm's-length sale between a willing buyer under no compulsion to buy and a willing seller under no compulsion to sell, the testimony of expert witnesses becomes necessary"; and *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 455, 459, 687 N.E.2d 426, in which we held that "when an actual sale is not available, 'an appraisal becomes necessary,'" quoting *Park Invest. Co. [v. Bd. of Tax Appeals]* 175 Ohio St. [410] 412, 25 O.O.2d 432, 195 N.E.2d 908.

Since the property at issue here had been sold in a recent arm's-length transaction, we do not need to determine whether actual rent or market rent should have been used in the property appraisal. Accordingly, the decision of the BTA is reversed, and the matter is remanded to the BTA for further proceedings consistent with this opinion and our instruction that pursuant to R.C. 5713.03, the sale price in a recent arm's-length transaction between a willing seller and a willing buyer shall be considered the true value of the property for taxation purposes.

*Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 15–16.

{¶ 25} The trial court erred, therefore, when it averaged the sale price and the tax appraisal value in order to assign a value to the properties. It should have assigned the sales price established by the sale itself. The sales price was especially reliable for the property located at 1275 W. 67th Street, which had been purchased the same year as the marriage. The trial court is therefore instructed to readdress the division of marital property in a manner consistent with this opinion.

{¶ 26} Accordingly, the second and 16th assignments of error are overruled, and the third assignment of error challenging the court's valuation of the premarital properties is sustained.

{¶ 27} For his fourth assignment of error, Joseph states:

IV. The trial court's findings that the plaintiff's loss of income production capacity was involuntary and due to family obligations is contrary to the manifest weight of the evidence, namely plaintiff Mary Kevdzija's sworn deposition testimony filed with the lower court.

{¶ 28} Joseph argues that the trial court should have found that Mary was voluntarily unemployed during the marriage, and therefore her loss of production capacity should not result in a lower income being imputed to her now. During the marriage, Mary did various small jobs, including free-lance artwork. Although she admitted that Joseph encouraged her to get a steady job, she explained her reasons for not taking a full-time job: their youngest child is not in school full-time, and their oldest child, who has serious physical and psychological disorders, requires frequent transportation to doctor's appointments.

{¶ 29} Joseph argues, on the other hand, that Mary's loss of income-producing capacity was not involuntary or a result of her family obligations, but, rather, a result of her lack of desire to work. Joseph cites Mary's deposition to support his allegation that she would have been able to work during the marriage if she had chosen to. The testimony he cites, however, does not entirely support his claim. In one section he cites, Mary explained that she tried to do free-lance art work from the home, but that Joseph drove away the customer by being rude to him.

{¶ 30} Joseph also cites a section of her deposition transcript in which she discusses the time she spent on her hobby, karate. She testified that she spent between ten and 12 hours a week at her brother-in-law's karate studio and that two of those hours were spent on lessons for herself and the rest working for the studio to pay for her lessons. Joseph claims that Mary should have been using that time to earn money. Mary's testimony shows, however, that she did not keep regular hours at the karate studio. Rather, she would go to the studio when she could enlist one of her sisters or Joseph to watch the children in the

evening. She also testified that if she had taken a full-time job during the marriage, the cost of child care would have negated any income she earned. It made no sense, she explained, to work so she could pay all the money she earned to someone else to watch her children. Joseph's references to the deposition, therefore, do not unqualifiedly support his claim that Mary's underemployment during the marriage was "voluntary," and the judge could properly have accepted Mary's explanation.

{¶ 31} Accordingly, this assignment of error is overruled.

{¶ 32} For his fifth assignment of error, Joseph states:

V. The trial court erred when it failed to find that the plaintiff was voluntarily unemployed due to being terminated.

{¶ 33} Joseph argues that because Mary was "terminated" from employment with a bank—employment begun after the parties separated—she is voluntarily unemployed. We note, however, that the trial court imputed $10,000 of income to Mary because it found her to be underemployed in her part-time position at Dillard's.

{¶ 34} Joseph cites two cases in which he alleges that the courts found a party to be voluntarily unemployed. One, *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, does not address the issue of employment at all. Rather, the issue in *Booth* is the standard of review for child-support cases.

{¶ 35} In the other case he cites, however, the Supreme Court stated that "the question whether a parent is voluntarily underemployed within the meaning of R.C. 3113.215(A)(5), and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case." *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218. Voluntary employment is determined through application of the statute. Joseph bears the burden, therefore, of identifying the portions of the statute he claims the court erred in applying.

{¶ 36} Joseph alleges that the trial court failed to consider the statutory factors indicating voluntary unemployment when it determined that Mary was not voluntarily unemployed. He does not, however, cite the specific statute. Nor does he explain which portion of the statute the trial court failed to consider. In fact, he does not even explain his theory of how the statute should have been applied. This omission is a major deficiency. App.R. 16(A)(7).

{¶ 37} The standard of review the Supreme Court articulated in *Rock* is "abuse of discretion." *Rock,* 67 Ohio St.3d at 112, 616 N.E.2d 218. Following this standard, we conclude that Joseph has failed to show that the trial court abused

its discretion in the amount of income the court imputed to Mary. Accordingly, this assignment of error lacks merit.

{¶ 38} For his sixth assignment of error, Joseph states:

VI.   The trial court's failure to modify the court's previous temporary order of support pendente lite as requested by motion of the defendant, so as to correct a mutually acknowledged failure to award the defendant an offset for out of pocket expenses incurred as a self employer in order to provide the minor children health insurance was against the manifest weight of the evidence and contrary to law.

{¶ 39} Joseph states that the trial court erred when it computed child support, because its worksheet failed to take into consideration that he provided health insurance for his children.  His motion to modify child support does not, however, have any attachment showing the invoice he paid for the health insurance.[6]  Rather, Joseph attaches copies of checks to "Group Service, Inc."

{¶ 40} In his appellate brief, Joseph refers the court to an affidavit in which he states that his total health-care bill, including health care for himself, is a certain amount.  He argues that the court should credit him for the total health-care bill along with his membership dues in the Council of Smaller Enterprises ("COSE"), through which he obtained his health insurance.  However, again, Joseph never says where in the stack of papers the affidavit was located.  Nor does he direct the court to documentation of the actual amount he pays for the children's coverage alone.

{¶ 41} Furthermore, Joseph does not request the court to credit him with only the amount paid for the children.  Rather, he expects credit for the amount of his health insurance and membership in COSE. But for the health insurance obligation, he reasons, he would not have to belong to COSE at all, so he dismisses the benefits COSE provides to his business.  In other words, Joseph has not argued for an adjustment of the child support in a manner the court can provide. Joseph is free to request a hearing in the trial court at which he can provide documentation and request an amendment of child support that reflects the actual amount he pays for the children's health insurance.

{¶ 42} The trial court did not err in omitting the cost of children's health insurance when it calculated child support.  Accordingly, this assignment of error is overruled.

{¶ 43} For his seventh assignment of error, Joseph states:

---

6.  In another argument, Joseph refers to the invoice he received from the provider of the health insurance.

VII. The trial court's failure to grant an offset to the defendant's child support obligation due to the plaintiff's receipt of S.S.I. monies for Kevin Kevdzija on defendant's Social Security account is an abuse of discretion and contrary to law.

{¶ 44} In her trial brief, Mary included documentation that she received Social Security benefits for the oldest child because of the child's disability. Joseph argues that Mary did not produce this information prior to the submission of the trial briefs and that he is due a credit for the amount of Social Security payments received. He may be correct concerning the payments prior to the child's entering the temporary custody of the county. However, since the child entered county custody, any subsequent Social Security payments have been sent to the county and not to Mary. This court lacks the authority to modify a support order to rectify an overpayment. For any modification, Joseph must first file a motion with the trial court. Accordingly, this assignment of error is overruled.

{¶ 45} For his eighth assignment of error, Joseph states:

VIII. The trial court erred in not awarding standard visitation with Keith and Katherine Kevdzija to the defendant/appellant as required by Local Rule.

{¶ 46} Joseph argues that the trial court erred when it did not independently address the issue of his visitation with the two younger children.[7] At the brief divorce hearing, however, the court asked whether the parties had agreed concerning parenting. Mary's attorney stated that they had "submitted to the Court a Joint Stipulation and Agreed Judgment Entry that took care of parental rights." Neither Joseph nor his attorney disagreed with this statement. Nor had Joseph filed any motions to modify visitation. The trial court did not err, therefore, in enforcing the agreed judgment entry submitted by the parties. If Joseph now wishes to modify the visitation order, he must file a motion with the trial court. Accordingly, this assignment of error is overruled.

{¶ 47} For his ninth assignment of error, Joseph states:

IX. The trial court erred when it arbitrarily adopted in its judgment entry the gross income level found by the magistrate at the 75(N) hearing more than two years previous when defendant's motion to modify, two subsequent affidavits and tax returns demonstrated that defendant's average previous income was artificially elevated due to a one time capital gain.

{¶ 48} Joseph argues that the trial court failed to consider the evidence he provided to support his claims concerning his income. Again, Joseph did not

---

7. Because of the oldest child's psychological problems and the fact that visiting with his father exacerbated those problems, Joseph's visitation with the oldest child was temporarily suspended. This assignment of error, therefore, addresses only the two younger children.

properly cite specific documents in support of his argument. Because the documents he provided are not properly presented to the court, we therefore hold that Joseph has failed to provide supporting evidence. Accordingly, this assignment of error is overruled.

{¶ 49} For his tenth and 11th assignments of error, Joseph states:

X. The trial court erred when it assigned a gross income level to the defendant that failed to account for the fact that the court in its judgment entry of divorce awarded defendant's best income producing property to the plaintiff.

XI. The trial court erred when it awarded a significant rental income producing property to the plaintiff but then failed to adjust plaintiff's gross income upward to reflect the addition of this established income producing capacity.

{¶ 50} Joseph points out that the trial court relied on income amounts from 2002 in deciding the support issues for 2004. In its property division, the court awarded one rental property, the property on West 86th St., entirely to Mary to equalize the property division. Joseph bought this property in 1985, prior to the marriage. It is one of the properties he claimed to have a separate interest in. The court failed, he argues, to deduct from Joseph's income the amount of rent collected from this property and to add it to Mary's income. Because Joseph presented no documentation to support his claim that this property was income-producing, this assignment of error lacks merit.

{¶ 51} Joseph argues his 12th, 13th, and 14th assignments of error together. They state:

XII. The lower court erred when the market value it assigned to defendant's demonstrated separate premarital properties at the time of the marriage was below that set by the certified valuations of the Cuyahoga County Auditor's Office when defendant had demonstrated that both properties had been purchased prior to the marriage pursuant to a foreclosure sale and an estate sale and the controlling law of the Ohio Supreme Court holds that a distressed properties' [sic] sale amount cannot be used as market value.

XIII. The lower court erred in its findings of fact and conclusions of law when it held defendant had not demonstrated through an affidavit, certified mortgage records and the parties' tax returns from 1986 through 2000, which were attached to defendant's final trial brief, that the defendant's separate property had produced sufficient ongoing independent income so that defendant's separate property had remained separate pursuant to the holding in *Ricketts v. Ricketts,* 1999 WL 64234 (2nd Dist., Feb. 12, 1999).

XIV. The lower court erred when it held in its findings of fact and conclusions of law that its' [sic] judgment entry of divorce resulted in a substantially equal

division of property when it awarded defendant's demonstrably separate property to the plaintiff and failed to adequately credit the defendant with the transfer of said value to the plaintiff.

{¶ 52} The 12th assignment of error reargues issues covered in the third assignment of error and will not be discussed again.

{¶ 53} In the 13th assignment of error, Joseph argues that the trial court erred when it failed to show that his separate property had remained separate until marital assets were used to pay off the mortgages on the property. In his trial brief, however, he fails to cite the location of the documentation that would support his claim. The only documents he provides numbers for in his brief are various loan documents and auditor's reports. Although he refers to his income tax returns as proof of the amount generated by and expended on each property, he does not inform the court which pages of the over 200 pages attached to his brief contain this information. Such unspecified citations do not constitute tracing the ownership of the property to prove that it remains separate.

{¶ 54} Because Joseph failed to properly trace the premarital property, he has failed to prove that it remained separate property during the marriage. Accordingly, the 13th assignment of error is overruled.

{¶ 55} The 14th assignment of error addresses the property division. Joseph alleges that the court erred in its property division because it improperly assigned the values of the separate property. As we previously explained, the trial court erred in valuing the separate properties, but the method of valuation Joseph suggested is not correct. To the extent that the trial court erred in valuing the marital property, this assignment of error is sustained.

{¶ 56} For his 15th assignment of error, Joseph states:

XV. The lower court erred when it awarded attorney fees to the plaintiff when the litigation during the full prior year was consumed by plaintiff's refusal to acknowledge the documented extent of defendant's separate premarital property interests.

{¶ 57} Although Joseph states this assignment of error in his summary of the assignments of error presented for review, he fails to separately argue it in his brief. App.R. 12(A)(2) states:

The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).

We decline, therefore, to address this assignment of error. It is accordingly overruled.

{¶ 58} The judgment of the trial court is vacated solely as to the valuation of "other" property and the resulting property division. The case is remanded only to assign the sale value of the property valuation and to redivide the property with these new amounts taken into consideration. The remainder of the case is affirmed.

Judgment affirmed in part
and vacated in part,
and cause remanded.

ROCCO and McMONAGLE, JJ., concur.