[Cite as *Hoy v. Hoy*, 2024-Ohio-2440.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| ARRETHA LAVON HOY, | : | |
| | : | Case No. 23CA704 |
| Plaintiff-Appellant-Cross-Appellee, | : | |
| | : | |
| | : | DECISION AND JUDGMENT ENTRY |
| v. | : | |
| | : | |
| ROBERT EUGENE HOY, | : | |
| | : | |
| Defendant-Appellee-Cross-Appellant. | : | **RELEASED: 06/18/2024** |

_____

APPEARANCES:

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for appellant.

K. Robert Toy, Toy Law Office, Athens, Ohio, for appellee.
_____

Wilkin, J.

**{¶1}** This is an appeal by plaintiff-appellant/cross-appellee, Arretha Lavon Hoy, ("wife") and cross-appeal by defendant-appellee/cross-appellant, Robert Eugene Hoy, ("husband") from the trial court's March 21, 2023 "final order on appellate remand."

**{¶2}** The husband appealed the parties' divorce to this court in *Hoy v. Hoy*, 4th Dist. Vinton No. 19CA717, 2021-Ohio-2074 (*"Hoy I"*). We sustained all four of husband's assignments of error and remanded the matter to the trial court for resolution, including the need to value Ahoy Transport, LLC ("Ahoy"), which was determined to be marital property. *Hoy I.* at ¶ 33. Ahoy is a company that transports Medicaid recipients to their medical-provider appointments.

{¶3} On remand, the trial court held a hearing and heard testimony, including testimony from the parties' expert witnesses who offered opinions on Ahoy's value.  Pertinent to Ahoy's value, which is the sole issue in this appeal, the trial court adopted the $588,000 value proposed by the husband's expert witness, but then reduced that amount by $135,000 for "vehicle debt," making Ahoy's net value $453,000.

{¶4} It is this judgment that the wife appeals asserting that the trial court erred in valuing Ahoy at $435,000.  She maintains Ahoy's value should be $155,000 based on her expert witness' opinion.

{¶5} The husband cross-appeals.  While he agrees with the trial court's adoption of his expert's $588,000 valuation, he asserts that the trial court erred when it reduced the $588,000 valuation by $135,000 for "vehicle debt" to find Ahoy's "net" value of $435,000.  He maintains Ahoy's value should be $588,000.

{¶6} Having reviewed the parties' arguments, the law, and the record, we overrule wife's assignment of error on appeal.  However, we sustain husband's assignment of error on cross-appeal, reverse the trial court's judgment, and remand the matter for the court to recalculate its valuation of Ahoy by not reducing Sparks White's $588,000 valuation by the $135,000 vehicle debt.

                              FACTS AND BACKGROUND

{¶7} For a complete discussion of the facts and procedural history of this case please see *Hoy I.*  Pertinent to the appeal herein, we sustained the husband's third assignment of error in *Hoy I* finding that: "Ahoy was marital property and should have been properly valued and included in the division of the

marital property. The trial court erred in failing to do so. Therefore, we sustain appellant's third assignment of error." *Hoy I* at ¶ 33-34.

{¶8} Thus, we reversed the trial court's judgment and remanded the cause for the trial court to address among other issues, Ahoy's value.

HEARING ON REMAND

{¶9} On remand, the trial court held a hearing. Courtney Sparks White ("Sparks White") appraised Ahoy on behalf of the husband. The court qualified her as a property appraisal expert, who estimated the value of Ahoy as of May 1, 2014, to be $588,000. Sparks White used the "income method[,]" or more specifically "the capitalization of earnings method" of appraisal to determine Ahoy's value. "This method considers historical earnings as a basis for value. Specifically, an expected benefit stream is divided by a capitalization rate to value."

{¶10} Sparks White's report detailed the process, as applied to Ahoy. The first step determined that Ahoy's expected benefit stream for 2014 was $149,000. The second step determined the capitalization rate, which was 24%. The expected benefit stream ($149,000) was then divided by the capitalization rate (24%), which resulted in the enterprise value of $620,833. Ahoy's cash of $25,783 was added to the enterprise value ($620,833), while Ahoy's interest-bearing debt of $58,923 was subtracted. That result, rounded to the nearest $1,000, equaled $588,000, Ahoy's estimated fair market value as of May 1, 2014.

{¶11} Dr. Robert Vedder ("Vedder"), appraised Ahoy on behalf of wife. The court qualified him as an economics expert. Vedder believed the value of

Ahoy was limited to its tangible assets because the contracts wife had with Southeastern Ohio Job and Family Services, which authorized her to operate her medical transportation company, were not transferable. Thus, Vedder's valuation of Ahoy was based on its assets, which consisted of some office equipment, a few computers, but mostly vehicles.

{¶12} Vedder testified that wife provided him with a list of approximately 32 vehicles and based on what she had told him about the vehicles, he estimated they were worth $10,000 each. Therefore, Vedder asserted that the gross value of Ahoy's automobiles was $320,000. Vedder admitted, however, that he was not qualified to appraise automobiles. Further, wife told him that there were $170,000 in loans used to purchase these vehicles. As explained in his previously prepared two-page report that was admitted into evidence in the June 2016 hearing, Vedder subtracted $170,000 of loans from the $320,000 gross value of the vehicles and added in $5,000 for office equipment and concluded that Ahoy's value as of May 1, 2014, was $155,000.

{¶13} The wife testified that she started Ahoy with a car, cell phone and tablet. She stated that she had a contract with Southeastern Ohio Job and Family Services that permitted her to run Ahoy. She stated that her contracts ended every June 30 so the business would have been over at that point. Wife stated that in 2014, Ahoy had a lot of competition in the medical transportation business such as "Jackson-Vinton Community Action, Daybreak, Care-a-lot, and Tri-Action." The wife did not understand why anyone would want to buy Ahoy when they could get their own contract to start their own business. Therefore,

the wife claimed that she could not have sold Ahoy. She testified that no one would have purchased Ahoy for its goodwill. If she had sold Ahoy on May 1, 2014, she agreed with Vedder's $155,000 valuation.

{¶14} The wife testified that her son, Dustin, acquired a medical transportation contract to operate his own medical transportation company that he named "A.T. Hoy." It has a logo that is similar to Ahoy's. The wife also admitted that when she retired at the end of 2017, she gave Dustin her customer list and Dustin agreed to hire Ahoy's drivers. Additionally, Dustin operated his business out of the same building that Ahoy operated and he used the same phone number that Ahoy had used.

{¶15} In analyzing Ahoy's value, the court reviewed both Vedder's and Sparks White's appraisals. Contrary to a determination that Ahoy had no goodwill value, the court found that Ahoy's 300-person client list added value to Ahoy. Ultimately, the court rejected Vedder's valuation and adopted Sparks White's $588,000 valuation calculated by using a capitalization of income approach. However, the court reduced Sparks White's $588,000 valuation by $135,000 of "vehicle debt" ultimately resulting in a $453,000 net valuation.

{¶16} After reevaluating the division of marital property in light of the $435,000 valuation of Ahoy, which the court "awarded" to the wife, the trial court also made a distributive award of $141,945 to the husband.

{¶17} The wife appeals the trial court's final order on remand to the extent it valued Ahoy at $453,000. She maintains Ahoy's value should be $155,000.

The husband cross-appeals the trial court's $453,000 valuation.  He asserts

Ahoy's value should be $588,000.

## I. Wife's Appeal

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DETERMINING THAT THE VALUE OF AHOY
TRANSPORT WAS $453,000 ON MAY 1, 2014.

{¶18} The wife argues that the asset approach used by her expert

witness, Vedder, that resulted in a $155,000 valuation was "more accurate" than

Sparks White's $588,000 valuation using the capitalization of income approach.

The wife argues that she was a "key person" in running and acquiring contracts

for Ahoy, which were non-transferable.  Without these contracts, Ahoy's only

value was its assets, which Vedder valued at $155,000.  Thus, the wife maintains

that the capitalization of income approach used by Sparks White to value Ahoy

resulted in a value that was artificially high.

{¶19} The wife also claims that Sparks White made several errors in

applying the capitalization of income approach.  She first claims that in

determining Ahoy's cash flow, Sparks White failed to include Ahoy's income for

the year 2010.  Including the 2010 income in the equation would have reduced

Ahoy's value by 15-20%.

{¶20} Next the wife maintains that the 24% capitalization rate used by

Sparks White should have been higher.  In support, the wife claims: Sparks

White (1) admitted that she did not know the make and model of Ahoy's vehicles,

(2) admitted that if the contracts with Ahoy had ended, then she had no

knowledge as to whether they could have been transferred, (3) admitted that if

someone purchased Ahoy, then wife's ability to compete against Ahoy could affect its value, (4) admitted that without any contract the company would only be worth the value of its assets, (5) admitted that she did not know how many employees Ahoy had, and (6) admitted that in order to determine fair market value there would be no guarantee that the contracts would be going with the sale which would be a problem.

{¶21} Therefore, the wife asks this court to reverse the trial court's judgment that valued Ahoy at $453,000, and use the figure of $155,000 as the value of Ahoy consistent with Vedder's valuation.

{¶22} In response, the husband asserts that the wife's primary argument is that Ahoy has no value because the Medicaid contracts are non-transferable. However, the husband points out that the wife testified that she provided her son with her client lists, her drivers, and her logo, which are all goodwill.  Even though the wife's son was able to secure his own contract to operate the medical transport company, the husband maintains that the contracts do not provide the value to the medical transport business as the wife claims.  He argues that the value is "created by the accumulation of clients over years of operation, which helps the business establish name recognition.  This is goodwill, and it has value."

{¶23} The husband also maintains that the trial court correctly rejected Vedder's $155,000 valuation because there were serious deficiencies in his appraisal.  For example, he claimed that Vedder (1) never observed any of Ahoy's assets, instead relying on representations from the wife, (2) was unaware

who prepared the list of assets that was provided to him, (3) only "estimated" that Ahoy owned 32 vehicles, (4) only "guessed" that each vehicle carried $5,000 in debt, (5) was not qualified to appraise automobiles, (6) was unaware of the year, manufacturer, model, mileage or condition of any of Ahoy's vehicles, (7) never reviewed a bank statement from Ahoy instead relying on what the wife told him, (8) did not request or consider any promissory notes that Ahoy may have had, and (9) claimed that Ahoy had no goodwill, but also admitted that brand recognition, company name, client lists, labor relations, and business location, all intangible assets owned by Ahoy, have goodwill.

{¶24} Therefore, husband opposes wife's $155,000 valuation of Ahoy. However, it is again important to note that the husband also does not agree with the trial court's $435,000 valuation of Ahoy. He believes that Ahoy is worth $588,000, which he addresses in his cross-appeal below.

## II. Husband's Cross-Appeal

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DETERMINING THAT THE VALUE OF AHOY TRANSPORT WAS $453,000 ON MAY 1, 2014

{¶25} Husband agrees with the court's adoption of Sparks White's valuation of Ahoy, which was $588,000. However, he maintains that the trial court erred when it deducted $135,000 of "vehicle debt" from the $588,000 valuation to find that Ahoy's "net" value was $435,000.00. The husband claims that the $135,000 representing vehicle debt came from the wife's "improper" auction of Ahoy's vehicles, which were secured by this debt in 2018. The valuation in this case was supposed to be as of May 1, 2014. The husband

claims that $135,000 is *not* the amount of debt that existed on May 1, 2014. Ahoy's debt at that time was $58,923, which was accounted for in Sparks White's calculations. Therefore, the trial court's subtraction of $135,000 from the $588,000 valuation must have been a clerical error. Accordingly, he claims that this court should reverse and remand this matter for the court to recalculate the value of Ahoy at $588,000.

**{¶26}** The wife did not file a response to the husband's cross-appeal. And her appeal brief does not address the husband's claim that the trial court erred in reducing the $588,000 estimated fair market value of Ahoy by the $135,000 vehicle debt.

### III. LAW

### 1. Standard of Review

**{¶27}** "The valuation of property in a divorce case is a question of fact. Thus, the issue is subject to review under a manifest weight of the evidence standard." *Covert v. Covert*, 4th Dist. Adams No. 03CA778, 2004-Ohio-3534, ¶ 6, citing *Brown v. Brown,* 4th Dist. Pike No. 02CA689, 2003-Ohio-304, ¶ 13.

> When we review whether a trial court's decision is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that we must reverse the judgment.

*Wray v. Gahm Properties, Ltd.*, 2018-Ohio-50, 103 N.E.3d 148, ¶ 7 (4th Dist.), citing *Martin v. Jones*, 2015-Ohio-3168, 41 N.E.3d 123, ¶ 68 (4th Dist.).

**{¶28}** However in weighing the evidence as a reviewing court, we "generally must defer to the factfinder's credibility determinations." *Matter of*

*Adoption of C.L.D.*, 4th Dist. Gallia No. 21CA1, 2022-Ohio-368, ¶ 12, citing

*Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶

21. Therefore,

> " ' "every reasonable intendment must be made in favor of the judgment and the finding of facts." ' " *Id.*, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). Furthermore, " ' "[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." ' " *Id.*, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978); *Matter of Adoption of T.C.W.*, 4th Dist. Meigs No. 19CA6, 2020-Ohio-1484, ¶ 40-44.

*Id.*

**{¶29}** "Consequently, the trial court's judgment will not be reversed as long

as it is supported by some competent, credible evidence. *Smith v. Smith*, 4th

Dist. Hocking No. 8CA11, 2019-Ohio-899, ¶ 44, citing *Shemo v. Mayfield Hts.,* 88

Ohio St.3d 7, 10, 2000-Ohio-258, 722 N.E.2d 1018. "This standard of review is

highly deferential and even 'some' evidence is sufficient to sustain the judgment

and to prevent a reversal." *Id.,* citing *Barkley v. Barkley*, 119 Ohio App.3d 155,

159, 694 N.E.2d 989 (1997).

## 2. Valuation

**{¶30}** " 'A trial court has some latitude in the means it uses to determine

the value of a marital asset.' " *Jones v. Jones*, 4th Dist. Athens No. 14CA33,

2015-Ohio-3650, ¶ 28, quoting *Kevdzija v. Kevdzija,* 166 Ohio App.3d 276, 2006-

Ohio-1723 850 N.E.2d 734, ¶ 23 (8th Dist.). " ' "When valuing a marital asset, a

trial court is neither required to use a particular valuation method nor precluded

from using any method." ' " *Id.*, quoting *Kevdzija* at ¶ 23, quoting *Clymer v. Clymer,* 10th Dist. Franklin No. 99AP-924, 2000 WL 1357911 (Sept. 21, 2000).

**{¶31}** " ' "The best method of determining value, when such information is available, is an actual sale of [ ] property between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so." ' " *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St. 3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 9, quoting *State ex rel. Park Inv. Co. v. Bd. of Tax Appeals, V. Park Inv. Co.*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964). However, "when an actual sale is not available 'an appraisal becomes necessary.' " *Dublin Senior Cmty. Ltd. P'ship v. Franklin Cnty. Bd. of Revision*, 80 Ohio St. 3d 455, 459, 1997-Ohio-326, 687 N.E.2d 426, quoting *State ex rel Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964). There are three generally recognized methods for appraising a business: (1) the asset approach; (2) the income approach, and (3) the market approach. *Tate v. Tate*, 5th Dist. Holmes No. 17 CA004, 2018-Ohio-1244, ¶ 67.

### IV. Analysis

**{¶32}** The parties presented two divergent appraisals of Ahoy both in terms of analysis and the amount of the valuation. However, under the applicable standard of review, our role is not to choose which we believe is most appropriate, but rather whether the one that the trial court chose is supported by some evidence.

**{¶33}** On remand, Vedder, on behalf of the wife, valued Ahoy at $155,000 appearing to rely on his analysis reflected in the two-page document that he

authored in valuing Ahoy in *Hoy I*.  Essentially Vedder determined that without the wife running Ahoy, it had no value aside from its assets (its vehicles) because she had exclusive contracts that allowed her to operate Ahoy as a medical transportation company that were non-transferable.

**{¶34}** However, the trial court found that Vedder was a qualified economist, but not a qualified property appraiser.  Further, the information upon which Vedder relied in determining Ahoy's value came mostly from conversations with the wife.  Finally, even though Vedder's appraisal was based mostly on automobiles, he admitted that he was not an expert in appraising automobiles and he had no knowledge of their condition.

**{¶35}** In contrast, the court found Sparks White to be an expert in property appraisal.  In valuing Ahoy, Sparks White considered all three typical business appraisal methods before determining the capitalization of income approach was the most appropriate to value Ahoy as meticulously documented in her 40-page report and supported by her testimony.  Equally detailed is her explanation of her application of the capitalization of income method in analyzing Ahoy's value by calculating Ahoy's sustainable cash flow and the applicable capitalization rate. Sparks White's analysis showed that Ahoy has an average annual sustainable cash flow of $149,000, which when divided by the 24% capitalization rate resulted in an enterprise value of $620,833.  Then Sparks White added into the enterprise value Ahoy's cash on hand as of May 1, 2014 ($25,783), subtracted Ahoy's loan debt as of May 1, 2014 ($58,293) to come up with $588,000, as an estimated fair market value of Ahoy.

**{¶36}** In considering the aforementioned evidence, the reasonable inferences therefrom, the credibility of Vedder and Sparks White, and resolving the conflicts in the evidence, we do not find that the trial court lost its way in adopting Sparks White's valuation of Ahoy so as to create a manifest miscarriage of justice that requires reversal of its judgment. We find that there is some competent, credible evidence supporting the trial court's adoption of Sparks White's income approach valuation of Ahoy, as opposed to merely valuing Ahoy's assets. Therefore, we overrule the wife's single assignment of error.

**{¶37}** Regarding the husband's cross-appeal, that the trial court erred in subtracting $135,000 "vehicle debt" from Sparks White's $588,000 valuation to get $453,000, we find no such evidence that supports said reduction.

**{¶38}** We have reviewed Sparks White's testimony and her report and find that she reduced the enterprise value by the "calculated outstanding loan balance as of May 1, 2014[,]" which was $58,923. However, Sparks White made no reference to a "$135,000 vehicle debt[,]" let alone an instruction to reduce her $588,000 fair market value of Ahoy by $135,000 of vehicle debt.

**{¶39}** Further, we note that the trial court references the $135,000 vehicle debt as coming from the trial court's second final hearing on August 14, 2018, prior to the first appeal. A review of the transcript for the August 14, 2018 hearing, revealed the following. The parties ultimately agreed to sell the Ahoy vehicles at auction. The auction took place on March 17, 2018. The vehicles were sold and wife testified that the vehicle debt to be paid off from the gross proceeds was *approximately $135,000*. The gross proceeds from the auction

were used to pay off the auctioneer fees and all the vehicle debt leaving a net balance of $83,107.30.

{¶40} The trial court further noted in its "final order on appellate remand" that the net proceeds from the auction of Ahoy assets, which was determined in *Hoy I* as being $83,107.30, was included in Ahoy's value. The trial court also allocated the $83,107.30 net proceeds to the parties and neither party has appealed this distribution. If the net proceeds were included in Ahoy's value and distributed to the parties, then it is unclear why the trial court reduced the already paid-off vehicle debt of $135,000 from Sparks White's $588,000 valuation.

{¶41} Because we find no evidence of the $135,000 vehicle debt as of May 1, 2014, we find that the trial court erred in reducing the $588,000 valuation by $135,000. Therefore, we sustain the husband's assignment of error on cross-appeal and remand this matter for the court to recalculate Ahoy's value consistent with our analysis.

V. CONCLUSION

{¶42} We overrule the wife's assignment of error on appeal, but sustain husband's assignment of error on cross-appeal. Pursuant to husband's cross-appeal, we reverse the trial court's judgment and remand the matter to the trial court to correct Ahoy's value consistent with our decision.

**JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED and costs shall be assessed to the appellant/cross-appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,


BY:      _____
         Kristy S. Wilkin, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**