OPINION
{¶ 1} Defendant-appellant, Bernard Brickner, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, regarding property valuation, spousal support, and property division. We affirm the trial court's decision.
 {¶ 2} After 20 years of marriage and the birth of two children, plaintiff-appellee, Rachelle Brickner (hereinafter referred to as Shelly) filed for divorce in April of 2007, which the trial court granted on March 11, 2008. Shelly retained custody of the children while the *Page 2 
trial court ordered visitation rights for appellant.
 {¶ 3} Among the property the trial court had to value and divide between the parties were six Bengals season tickets, an airplane, and a business, Opportunities to Succeed, Inc. (OTS). The company was founded and owned by both parties, and provides home-based support for ailing and handicapped individuals. The trial court awarded the Bengals tickets to Shelly, but awarded half their $18,000 value to appellant. After examining two different estimates for the value of the aircraft, the trial court "order[ed] a valuation of $329,158.00" and awarded the plane to appellant. Lastly, after hearing extensive testimony by two experts as to the value of OTS and examining two lengthy reports filed by the experts, the trial court placed a value of $314,131 on OTS and awarded it to Shelly. Finally, in part because the trial court gave OTS to Shelly, it awarded $6,000 per month in spousal support to appellant for five years. Appellant filed an appeal raising four assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT WHEN IT FOUND THAT THE VALUE OF THE PARTIES' BUSINESS, OTS, WAS $314,131.00."
 {¶ 6} Assignment of Error No. 4:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT WHEN IT OVERVALUED MARITAL PROPERTY."
 {¶ 8} Because appellant's first and fourth assignments of error ultimately relate to the trial court's valuation of property, we have elected to address them together for ease of discussion.
 {¶ 9} Appellant argues that the trial court erred when it placed a $314,131 value on OTS and a $329,158 value on the airplane. We find no merit to either argument.
 {¶ 10} A trial court had broad discretion when making an equitable division of marital *Page 3 
property. Donovan v. Donovan (1996), 110 Ohio App.3d 615, 621. However, in order for the trial court to make these equitable distributions, it must first determine the value of marital assets. Id. at 620-21. "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances." Baker v. Baker (1992),83 Ohio App.3d 700, 702, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220, 221-222. Therefore, a trial court has broad discretion to make a determination as to the value of marital property. Donovan at 621. A trial court's decision regarding property valuation will not be disturbed on appeal absent an abuse of discretion. Id. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Because of its discretion, "[a] trial court has some latitude in the means it uses to determine the value of a marital asset."Kevdzija v. Kevdzija, 166 Ohio App.3d 276, 286, 2006-Ohio-1723, ¶ 23. "When valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method."Gregory v. Kottman-Gregory, Madison App. Nos. CA2004-11-039, CA2004-11-041, 2005-Ohio-6558, ¶ 15, citing James v. James (1995),101 Ohio App.3d 668, 681.
 {¶ 12} Finally, "[i]n reviewing the trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact." Shemo v. Mayfield Hts.,88 Ohio St.3d 7, 10, 2000-Ohio-258. An appellate court must give deference to a trial court's findings because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Any issues relating to witness credibility and/or the weight to be given to their testimony is the function of the trier of fact. Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23; Seasons Coal at 80. Thus, a judgment which is supported by competent, credible *Page 4 
evidence will not be reversed on appeal. C. E. Morris Co. v. FoleyConst. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 13} During the course of the trial, both appellant and Shelly introduced testimony from experts regarding the valuation of OTS. Each expert also offered a report of his findings as well as testifying as to the merits of his valuation and criticisms of the other party's appraisal. Appellant's expert, David A. Dinsmore, essentially made two valuations based on the "cost" approach (the liquidation value of the company) and the "market" approach (value of the company on the open market) to company valuation. According to Dinsmore, OTS was worth $314,131 under the cost approach and $640,292 under the market approach. Shelly's expert, Harold P. Kremer, also made two valuations based on the cost approach and the "earnings" approach (present value of future cash flows for the company). Under the cost approach, Kremer testified the company was worth $250,000, while under the earning's approach OTS was worth $380,000. However, Kremer also testified, and stated in his report, that based on all of his analyses, he believed OTS was worth $300,000.
 {¶ 14} The trial court listened to both experts' testimony and reviewed their reports. In its oral judgment, the trial court noted that neither expert agreed with the other as to valuations made or methodologies used. The trial court dismissed Dinsmore's market value for OTS because the expert relied on sales comparisons of companies in Florida whose business was significantly different from OTS. While the trial court examined the other approaches, it settled on Dinsmore's cost approach value for OTS.
 {¶ 15} It is clear from the record that the trial court carefully considered the different approaches, and chose to use the valuation of OTS that both experts had some limited agreement upon.[1] The trial court's valuation of OTS was neither unreasonable nor arbitrary, *Page 5 
nor was it unconscionable. Because the trial court did not abuse its discretion in valuing OTS at $314,131, appellant's first assignment of error is overruled.
 {¶ 16} While neither appellant nor Shelly had an expert testify as to the value of the parties' 2004 Cirrus SR22 G2 aircraft, both submitted reports from expert appraisers during the trial. Appellant's report from Eagle Creek Aviation Services, a Cirrus retailer and authorized service center, appraised the aircraft at $300,000. Shelly's report from Just Plane Appraisals, L.L.C., an aircraft appraisal company based in Cincinnati and founded in 2002, placed a value of $358,260 on the aircraft. The trial court based its valuation on a review of both appraisals, and assessed a $329,158 value for the aircraft.
 {¶ 17} We note that the difference between appellant's appraisal and Shelly's appraisal is $58,260, half of which is $29,130. Based on the value the trial court assigned to the aircraft, it appears as though the court's valuation was approximately half-way between *Page 6 
both appraisals. Because the trial court made its valuation of the aircraft "based on [a] review of both appraisals" and because court chose an approximately median value between the appraisals we cannot say the trial court abused its discretion is valuing the aircraft at $329,158. Appellant's fourth assignment of error is hereby overruled.
 {¶ 18} Assignment of Error No. 2:
 {¶ 19} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT WHEN IT AWARDED HIM SPOUSAL SUPPORT OF $6,000.00 PER MONTH FOR FIVE YEARS."
 {¶ 20} Appellant argues, in his second assignment of error, that the trial court's decision as to the duration and amount of the spousal support award was arbitrary, unreasonable and an abuse of discretion. We find no merit to appellant's arguments.
 {¶ 21} A trial court is vested with the authority to order an award of reasonable spousal support to either party in a divorce proceeding. R.C. 3105.18(B). Pursuant to R.C. 3105.18(C)(1), "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the * * * factors" set forth in R.C. 3105.18(C)(1). See, also, Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, paragraph one of the syllabus. These factors include each party's income, earning capacities, age, retirement benefits education, assets and liabilities, and physical, mental and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income capacity due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). In addition, a trial court is free to consider any other factor it deems relevant and equitable. R.C. 3105.18(C)(1)(n). After considering these statutory factors, if the court orders an award of spousal support, "the trial court must indicate the basis for its award in *Page 7 
sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law."Kaechele, paragraph two of the syllabus.
 {¶ 22} "After determining a need exists, the court is then confronted with the often difficult task of determining the duration of the need."Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 69. "The modern trend favors terminating alimony on a date certain." Id. "The reason for awarding sustenance alimony payable only to a date certain is that the payee's need requiring support ceases, when, under reasonable circumstances, the payee can become self-supporting." Id. "Conversely, if under reasonable circumstances a divorced spouse does not have the resources, ability orpotential to become self-supporting, then an award of sustenance alimony for life would be proper." (Emphasis sic.) Id.
 {¶ 23} "The trial court has broad discretion in deciding support is needed based on the facts and circumstances of each case." Id. at 67. "A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion." Id.
 {¶ 24} The first part of appellant's argument is that five years is an insufficient period of support because he is disabled. The trial court heard testimony from both parties regarding appellant's illness and reviewed the vocational assessment reports which detailed appellant's illness as well as information from the Mayo Clinic. Despite all of this evidence, the trial court stated repeatedly that appellant was not disabled. We cannot say that the trial court erred in the assessment, as it was within the court's discretion to make. See, e.g., MacMurray v.Mayo, Franklin County App. 07AP-38, 2007-Ohio-6998, ¶ 10-16 (finding no abuse of discretion where the trial court failed to find appellant was disabled in its spousal support determination).
 {¶ 25} While the trial court imputed "disability income" to appellant, it was only because the court was addressing the income factors with which it was statutorily required to *Page 8 
comply, and not because it was being contradictory to its determination that appellant was not disabled. Furthermore, it is entirely within a trial court's discretion to impute income to a spouse when making a spousal support determination.[2]
 {¶ 26} The record reflects that the trial court properly followed the statutory requirements of R.C. 3105.18 in making its spousal support determination.[3] The trial court *Page 9 
spent a considerable amount of time on the subject of appellant's illness and it is quite evident that the court's decision regarding the length of support was based on its belief that appellant had the "resources, ability or potential to become self-supporting" within that five year period. (Empasis sic.) Kunkle, 51 Ohio St.3d at 69. Because the duration of the spousal support award is discretionary and the record reflects that the trial court's decision was fair, equitable and in accordance with the law, we cannot say that the trial court abused its discretion when it ordered termination of appellant's spousal support after five years.
 {¶ 27} The second part of appellant's spousal support argument relates to the amount of support the trial court awarded to him. Specifically, appellant maintains that the trial court failed to take into account the fact that as sole owner of OTS, Shelly would receive 100 percent of the dividends from the company, making her income or earnings $313,000 per year rather than the $198,000 that the trial court found in its R.C. 3105.18(C) analysis. While we agree with appellant to the extent that the trial court was required to include Shelly's retention of OTS in its support determination, we have found that the trial court did have this consideration in mind when rendering its decision.
 {¶ 28} A trial court is required to determine division or disbursement of property prior to making any spousal support award. R.C. 3105.18(B);Hutta v. Hutta, 177 Ohio App.3d 414, 2007-Ohio-3756, ¶ 10. "R.C. 3105.18(C)(1)(a) directs the trial court to consider `[t]he income of the parties, from all sources, including, but not limited to, incomederived from property divided, disbursed, or distributed undersection 3105.171 of the Revised Code.'" (Emphasis sic.) Id. at ¶ 34. "In light of this statutory mandate, the income generated by the business *Page 10 
interests retained by appellee pursuant to the division of marital assets needed to be evaluated and considered by the trial court in determining the appropriate amount of spousal support, along with the remaining 18(C) factors." Id.
 {¶ 29} In this case, the record shows that the trial court considered the fact that Shelly was awarded all interest in OTS when it made its spousal support determination. The trial court stated: "Mr. Brickner is making a claim of spousal support against some of the earnings of the business. This Court does not disagree with the concept of limited spousal support and the Court will address this later on in detail under the spousal support [determination]." In addition, the trial court specifically acknowledged during its recitation of the facts as they related to the R.C. 3105.18(C) factors, "because she is maintaining the business that he is entitled to a level of support to time to begin his own [business]." Thus, the trial court took into account the fact that Shelly was retaining OTS when it decided to award $6,000 per month in spousal support to appellant. Since there was no abuse of discretion, we overrule appellant's second assignment of error.
 {¶ 30} Assignment of Error No. 3:
 {¶ 31} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT WHEN IT FAILED TO AWARD HIM A MARITAL ASSET THAT HE ACQUIRED AND MADE PRIMARY USE."
 {¶ 32} In appellant's third assignment of error he argues that he should have been awarded the six Bengals tickets because the trial court failed to "address the many other relevant and equitable factors that go along with this specific piece of property." Appellant is not arguing the trial court erred in assigning a value to the tickets, merely that the court should have awarded that particular piece of marital property to him. We find no merit to appellant's argument.
 {¶ 33} In a divorce proceeding, the trial court must divide marital property equally, or in *Page 11 
an equitable manner. R.C. 3105.171(C)(1). When making the division of marital property, the trial court shall consider the factors set forth in R.C. 3105.171(F), including any "factor that the court expressly finds to be relevant and equitable." A "trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele, 35 Ohio St.3d at paragraph two of the syllabus.
 {¶ 34} "The different facts and circumstances which each divorce case presents to a trial court requires that a trial judge be given wide latitude in dividing property between the parties." Koegel v.Koegel (1982), 69 Ohio St.2d 355, 357. As such, there are no "flat rules" for determining marital property division. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 356. "When reviewing the trial court's marital property division, the reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion in fashioning the award." James v. James (1995),101 Ohio App.3d 668, 680. "Moreover, a reviewing court should not review discrete aspects of the property division out of the context of the entire award, but should consider the distribution within the context of the entire award." Id.
 {¶ 35} The six Bengals tickets in question were acquired in 1996 when appellant negotiated their sale from the previous owner who in turn had owned them for 30 years. The seats were then licensed in appellant's name. Appellant stated that the tickets were primarily used by relatives, friends and family. While appellant testified that he went to all of the games, he said that Shelly's attendance was more sporadic as she was not as interested as he was in attending the games. Also included with the tickets was a parking pass which appellant was able to obtain through his own efforts. The parking space is situated near a gate which allows for easy access, including wheelchair access, to the six stadium seats. Finally, appellant testified that he wanted the Bengals tickets because it is one of the "only *Page 12 
activities] that [he] really can do anymore" especially since his ability to get to the seats is made easier by the closeness of the parking space.
 {¶ 36} Shelly testified that she did not participate in obtaining the Bengals tickets. Although she went to some of the games, she stated that appellant attended a majority of the games. Shelly testified that she wanted the tickets in order to use them to take mentally retarded or disabled individuals to games, and for the use of her two sons, who "love to go." She also testified that she lived in Butler County, while appellant did not, so she would be able to get "more use" out of the tickets. Finally, she stated that if appellant was unable to work then he would not be able to afford the tickets and would subsequently lose the seat license. Therefore, she said, no one in the family would derive any further benefit from the tickets.
 {¶ 37} Prior to making any property awards, the trial court specifically noted that it was required to follow the statutory guidelines set forth in R.C. 3105.171.[4] In awarding the tickets to Shelly and half their $18,000 value to appellant, the trial court noted that it was uncertain as to why appellant wanted to keep the tickets when he resides in Tiffin, Ohio and he has difficulty in doing physical things and/or even driving the distance required to get to Butler County. In contrast, the trial court stated that Shelly and the boys still lived in Butler County, which is adjacent to the county where the stadium is located. Although, it appears from the record that the Bengals tickets were utilized by appellant more during the marriage than by Shelly, it is simply not a reason to find an abuse of discretion by the trial court. While we are *Page 13 
sympathetic to the fact that attending Bengals games may be one of the few activities appellant can still engage in because of his illness, it is not grounds for reversal.
 {¶ 38} We also note that appellant received half the value of the tickets as well as a variety of other personal property items in the property division. Should he wish to attend a game, despite the Bengals' record, appellant has sufficient resources in order to purchase tickets to a game. See Heer v. Heer (July 11, 1985), Franklin App. No. 84AP-1144, 1985 WL 10066 at *4 (finding plaintiff had substantial assets which would enable her to purchase her own Ohio State University football tickets).
 {¶ 39} Because the trial court did not abuse its discretion when awarding the Bengals tickets to Shelly, appellant's third assignment of error is overruled.
 {¶ 40} Judgment affirmed.
WALSH and RINGLAND, JJ., concur.
[1] In entering its decision regarding the OTS valuation, the trial court stated:
"I can honestly say I have never in the life of trying cases found valuations more different. Not only did both experts disagree with the other one's valuation methods and/or valuation opinions, they also didn't agree with any of the authority sources cited by the other. In addition to them not agreeing with the methods that the other used, or the leading authorities that the other used, they did not agree conceptually or otherwise regarding how the business should be viewed except for in one manner. And that was the costs analysis. Both of them conducted a cost analysis. Mr. Kremer's was $250,000.00, Mr. Dinsmore was $314.131.00. Mr. Kremer then did an earnings analysis of the business and Mr. Dinsmore did a market analysis. In actuality, the only thing these two agreed upon * * * [was] the definition of fair market value which is really provided by my favorite arm of the government, the Internal Revenue Service * * * the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge o[f] relevant facts. * * * The three basic approaches to determine value of an ongoing concern * * * are the market approach comparison, the asset based approach, and the income approach. Within all of these approaches, there are acceptable valuation methods. These two experts disagreed as to the applicable valuation methods and the approaches. * * * This Court completely disregards Mr. Dinsmore's market approach * * * because this Court does not believe that skilled nursing care is the definition of what OTS does as a business, but also because of the businesses he chose [to compare OTS with in developing his market valuation]. Not one of these businesses is situated in Ohio. Not one of these businesses provides care for a mentally handicapped individual in a like or similar setting. When asked the question of whether or not there should be some consideration of region — the difference between an Ohio market and a Florida market, he clearly told this Court that this is no consideration or no need to, um do an adjustment for the local, regional, national or international risk of that business for the area in which the market place is. * * * In looking at the other aspects of the appraisals, this Court finds that they were not so far away as it relates to even the cost method. That was the only one that they both used * * * Because I'm throwing out the market analysis as unreliable, and Mr. Dinsmore did not do an earnings approach, he did a cost analysis, as did Mr. Kremer. * * * Mr. Kremer did an earnings analysis and roughly — after he took out the fact that there is no marketability — his value $378,492.00 for the business. I have looked at the earnings and the cost. This Court is assigning Mr. Dinsmore's cost basis."
[2] "The statute governing the determination for spousal support, R.C. 3105.18, refers only to the `income of the parties.' See R.C. 3105.18(C)(1)(a). Thus, this code section gives more latitude to the trial court in calculating income for purposes of spousal support * * * where the calculation of spousal support is determined by earning capacity." Frost v. Frost (1992), 84 Ohio App.3d 699, 720.
[3] Specifically, in making its determination the trial court found:
"Wife * * * earned $198,000.00 in 2007. The Court is finding that she is earning commensurate to her capacity. She is 41 years of age and no evidence has been presented that there are any physical, mental or emotional conditions that prohibit her from maintaining gainful employment. The court equalized the retirement benefits she and her husband were to receive, and she and her husband had been married for 20 years. There is no evidence that they have any minor children of the marriage that would cause her not to maintain employment outside the home because of her responsibilities for small children. There is no doubt that she has maintained an outstanding standard of living during the marriage. * * * [She has] a Bachelor's of Education. She has worked in the field of mentally handicapped individuals and she and her husband struck out and started their own business, OTS * * * The Court has * * * given her an equal share of all assets and debts of the marriage. There is no evidence that she contributed to his education, training or earning ability during the marriage other than the fact he acquired a private pilot's license. No evidence was presented that she needs additional time and expense to acquire additional education, training, or job experience in order to maintain her employment. The Court has considered the tax consequences of support and the Court makes a finding she has not lost income production as a result of her marital responsibilities. * * * Husband received from wife this year, um — this is not in addition to any [monies] he would have received through March of `07 * * * $73,000.00 cash for his living expenses. Husband is not working at this time. Most of this case has focused upon whether or not he has the ability to work. * * * I've read the reports. Ms. Brickner's occupational therapist says he can work doing exactly what he was doing at OTS and can earn $140,000.00 annually. Of course, Mr. Brickner's expert says in his report that based on his reading of the medical records, Mr. Brickner cannot maintain any type of employment and he's completely and totally disabled. Okay. Well I have a problem with all of this because 1) Mr. Brickner's experience is really — in running a company * * * providing home health care services for the mentally handicapped. * * * There is no business out there that he can go out and buy so in order for him to actually earn what he was earning previously, he'd have to go out and establish a business like OTS in a county other than Butler, Warren and Clermont. * * * Do I think he's capable of working an earning something as we sit here today, sure * * * As it relates to his expert, he says he's a psychologist who's read medical doctors' reports and he finds him disabled. I don't have any physician — any medical doctor — who says this man is disabled. * * * so I am not finding him disabled. If he were disabled, he himself will be able to apply for Social Security disability. * * * an income of $20,844.00. So if he actually believes he's completely disabled, that would be his annual income. He is 44 years of age * * * He has psoriatic arthritis [which causes] pain in affected joints, swollen joints, joints that are warm to the touch. * * * But I know one thing, the[ ] [medical diagnosis are] not saying that he's disabled. So the Court is not making a finding that he's disabled. * * * the Court equally divided all marital retirement benefits accrued during the marriage. The marriage is 20 years in duration. It is appropriate for employment outside the home. There are no minor children that he cares for. Again, they had an extremely, extremely good standard of living. * * * After their incomes, they both received distributions of large amounts of cash from this business. * * he has a Bachelor's of Science * * * the Court equalized all marital assets and debts of the parties during marriage. The marriage contributed to his education and training and earning ability because he earned a private pilot's license. * * * Tax consequences of support — the Court has considered it. * * * no evidence is here that he lost income production as a result of marital responsibilities. * * * this Court does believe that Mr. Brickner is not disabled. This Court does believe that Mr. Brickner * * * could open another like and similar business to OTS and run it. * * * I fully believe that he and his brothers will start a venture and whether that's in the private plane industry or in a business like OTS because there is significant — significant cash to be made. However, this Court also believes that — that because she is maintaining the business that he is entitled to a level of support to give him sufficient time to begin his own [business] * * * he has no expenses. He's not living independently. He's not doing anything independently. * * * Since this Court finds that he believes he's completely disabled, he's entitled to $20,844 from what he's paid into [Social Security] * * * The Court is ordering her to pay him spousal support in the amount of $6,000.00 a month for a period of five years."
[4] R.C. 3105.171(F): In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors: (1) The duration of the marriage; (2) The assets and liabilities of the spouses; (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) The liquidity of the property to be distributed; (5) The economic desirability of retaining intact an asset or an interest in an asset; (6) The tax consequences of the property division upon the respective awards to be made to each spouse; (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) Any other factor that the court expressly finds to be relevant and equitable. *Page 1