{¶ 1} Defendant-appellant, Sarah W. Moore n.k.a. Sarah E. Walker, appeals from a decree of divorce issued by the Clermont County Court of Common Pleas, Domestic Relations Division, granting a divorce to her and her former husband, plaintiff-appellee, Louis H. Moore II.
 {¶ 2} The parties were married on August 6, 1983. Two children were born as issue of the marriage: one in September 1988 and the other in December 1989. *Page 2 
 {¶ 3} In 1991, appellee started his own real estate company, Louis H. Moore Realtors. In 1998, appellee and John Drake started a residential mortgage brokerage called Highland Mortgage Acceptance Company, with appellee and Drake each owning a 50 percent interest in the company. In December 2001, appellee and Drake, along with Dr. George Broderick and Doug Thoreson, formed Easter Hill, LLC, and started a subdivision development project known as the East Hill Preserve Subdivision in Stonelick Township, in Clermont County, Ohio.
 {¶ 4} On November 30, 2003, appellee moved out of the marital residence. In January 2004, appellee filed a complaint for divorce in the Clermont County Court of Common Pleas, Division of Domestic Relations. Appellant filed an answer and counterclaim.
 {¶ 5} In June 2004, the parties made an attempt at reconciliation, which ultimately proved unsuccessful. On June 30, 2004, the parties sold the marital residence with appellant retaining the full net proceeds of the sale, which were $34,000. In June or July of 2004, Moore Realtors merged with Remax Results Plus after many of Moore Realtors' agents had already left to join that company.
 {¶ 6} In November 2004, Dr. Broderick gave a $30,000 promissory note to appellee, Drake, and Thoreson, each, for their interests in the East Hill project, after the three of them were unable to come up with additional money to invest in the project. In December 2004, Highland Mortgage closed its doors due to a decline in business. In July 2005, appellee filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code.
 {¶ 7} On January 27, 2006 and March 3, 2006, a final hearing was held in the parties' divorce proceedings. On April 28, 2006, the trial court issued a decision, finding, among other things, that: (1) the value of Moore Realtors and Highland Mortgage was "zero," (2) the parties' interest in the East Hill project had been reduced to a $30,000 promissory note, *Page 3 
which the court ordered to be divided evenly between the parties,[1]
(3) appellee's annual income was $51,500 and appellant's annual income was $42,000 for purposes of calculating child support, and (4) appellant was not entitled to receive any spousal support.
 {¶ 8} On August 7, 2006, the trial court issued a final decree of divorce, incorporating the provisions of its previous decision.
 {¶ 9} Appellant now appeals from the final decree of divorce and raises six assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED IN FAILING TO AWARD WIFE A CAR PURSUANT TO A WRITTEN AGREEMENT OF THE PARTIES."
 {¶ 12} Appellant argues that the trial court erred in failing to award her a 2004 C230 Mercedes Benz pursuant to a written agreement between the parties that obligated appellee to purchase such a car for her. We disagree with this argument.
 {¶ 13} After the parties separated and filed for divorce, appellee asked appellant for permission to trade in her 2002 Mercedes C230 Kompressor for a 2004 Mercedes C230, to allow him to make lesser payments but still provide appellant and their children with a "good, reliable, safe car." Appellant agreed to the exchange, but insisted that the following agreement be drawn up to ensure appellee would honor his word:
 {¶ 14} "I, Louis H. Moore, II, agree to purchase a new automobile2004 C230 for Sarah Walker Moore. Further, I agree to be totally responsible for the debt (loan payment) on said new automobile 2004C230. The new automobile is in consideration for prior car (2002 Mercedes C230 Kompressor). It is expressly agreed that the same exclusive use of *Page 4 
the new automobile is to be the same as was the fully gifted C230 Kompressor."
 {¶ 15} Appellee subsequently delivered the 2004 Mercedes to appellant, but the car was repossessed after appellee stopped making payments on it. At trial, appellee acknowledged he had made the agreement, but was financially unable to continue making payments on the car.
 {¶ 16} Initially, we disagree with appellant's contention that the trial court "ignored" the parties' written agreement regarding the 2004 Mercedes. The record shows that the trial court had been made aware of the agreement prior to the final hearing, because on July 8, 2005, the court issued an entry stating that it would rule on the issue "at the culmination of and during the final decree proceedings."
 {¶ 17} However, when the trial court issued a decision following the final hearing, it did not expressly address the issue of the parties' agreement regarding the 2004 Mercedes, but instead, merely awarded each party his or her own vehicle. When appellant filed proposed findings of fact and conclusions of law, she pointed out that the trial court had not ruled on the issue of the parties' agreement regarding the 2004 Mercedes. Once again, however, when the trial court issued a final decree of divorce, the only ruling the trial court expressly made with respect to the parties' motor vehicles was to award each party his or her vehicle.
 {¶ 18} While the trial court should have expressly ruled on appellant's contract claim regarding the 2004 Mercedes, it is apparent from a review of the entire record that the court was well aware of that claim and overruled it, albeit, sub silentio. Moreover, the trial court's decision not to enforce the parties' agreement regarding the 2004 Mercedes was not an abuse its discretion or otherwise erroneous.
 {¶ 19} R.C. 3103.05 provides:
 {¶ 20} "A husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions *Page 5 
between themselves, to the general rules which control the actions of persons occupying confidential relations with each other."
 {¶ 21} The phrase "subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other," is a limitation on a married couple's right to contract that requires contracts between married couples to be "fair, just, and reasonable" before a court will enforce them. See Hoagland v. Hoagland (1925), 113 Ohio St. 228, 234; see, also,Brewer v. Brewer (1948), 84 Ohio App. 35, 36-37, citingHoagland.
 {¶ 22} Another limitation on a married couple's right to contract is found in R.C. 3103.06, which states:
 {¶ 23} "A husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation."
 {¶ 24} R.C. 3103.06 has been interpreted as prohibiting a married couple from entering into a contract during the marriage without the immediate separation of the spouses. See Du Bois v. Coen (1919),100 Ohio St. 17, 23-25. However, separation agreements between married couples are enforceable. See R.C. 3105.10(B); Reynolds v. Reynolds (Feb. 8, 1993), Clinton App. No. CA92-07-013.
 {¶ 25} Appellant has described the contract between her and appellee regarding the 2004 Mercedes as being "in the nature of a separation agreement[.]" A "separation agreement" is "[a]n agreement between spouses in the process of a divorce or legal separation concerning alimony, maintenance, property division, child custody and support, and the like." Black's Law Dictionary (8th Ed.2004) 1396.
 {¶ 26} R.C. 3105.10(B)(2) provides:
 {¶ 27} "A separation agreement that was voluntarily entered into by the parties may be *Page 6 
enforceable by the court of common pleas upon the motion of either party to the agreement, if the court determines that it would be in theinterests of justice and equity to require enforcement of the separation agreement." (Emphasis added.)
 {¶ 28} Given the use of the word "may" in R.C. 3105.10(B)(2), it is apparent that the decision whether to enforce a separation agreement is a discretionary one, and the trial court's decision will not be reversed on appeal absent an abuse of discretion. Schneider v. Schneider (1996),110 Ohio App.3d 487, 491. A trial court abuses its discretion when its decision is arbitrary, unconscionable, or unreasonable. Id. A trial court's decision is unreasonable when there is "no sound reasoning process" to support it. Id. It is not enough that the reviewing court would have used a different reasoning process had it been deciding the matter in the first instance. Id.
 {¶ 29} In this case, there is sufficient evidence in the record to support the trial court's decision not to enforce the parties' separation agreement regarding the 2004 Mercedes. The agreement arose from appellee's desire to reduce the payments he was making on a 2002 Mercedes that he had previously gifted to appellant during the marriage. Appellee breached the agreement when, according to his testimony, he was no longer able to make payments on the 2004 Mercedes.
 {¶ 30} In its April 2006 decision, the trial court found that the parties had "lived above their means and enjoyed a high standard of living that was financed by credit cards, personal loans, and carrying three mortgages on the marital residence." The court further found that "[d]ue to [appellee's] business losses and liabilities, this lifestyle is no longer available."
 {¶ 31} There was evidence in the record to support the trial court's factual finding that the parties are no longer able to support the lifestyle they had led during the marriage. Consequently, the trial court's refusal to enforce the parties' agreement regarding the 2004 Mercedes was not erroneous under R.C. 3103.05 because there was evidence to show that *Page 7 
enforcement of the agreement would have been unfair, unjust, or unreasonable. Moreover, the trial court's refusal to enforce the agreement was not an abuse discretion under R.C. 3105.10(B)(2) because there was evidence to show that enforcement of the agreement would not have been "in the interests of justice and equity" under the facts of this case.
 {¶ 32} Appellant's first assignment of error is overruled.
 {¶ 33} Assignment of Error No. 2:
 {¶ 34} "THE TRIAL COURT ERRED IN FINDING THAT THE VALUE OF HIGHLAND MORTGAGE WAS ZERO."
 {¶ 35} Assignment of Error No. 3:
 {¶ 36} "THE TRIAL COURT ERRED IN FINDING THAT THE VALUE OF EASTER HILL, LLC WAS ZERO."
 {¶ 37} Assignment of Error No. 4:
 {¶ 38} "THE TRIAL [sic] ERRED IN ITS DETERMINATION THAT LOUIS MOORE, INC. HAD A VALUE OF $0.00."
 {¶ 39} Appellant's second, third, and fourth assignments of error are interrelated and, therefore, we shall address them together.
 {¶ 40} Appellant argues that the trial court erred by finding the value of Moore Realtors and Highland Mortgage to be zero, and by failing to address the value of the East Hill project other than to order that the parties' remaining $30,000 promissory note be divided equally between the parties. We disagree with these arguments.
 {¶ 41} A trial court is vested with broad, though not unlimited, discretion when dividing marital property. Bisker v. Bisker,69 Ohio St.3d 608, 609, 1994-Ohio-307, citing Berish v. Berish (1982),69 Ohio St.2d 318. A reviewing court must not substitute its judgment for that of the trial court unless the trial court's decision constitutes an abuse of discretion, i.e., the decision is unreasonable, arbitrary or unconscionable. Bisker, citing Blakemore v. Blakemore *Page 8 
(1983), 5 Ohio St.3d 217.
 {¶ 42} Appellee does not dispute that any interest the parties have or had in Moore Realtors, Highland Mortgage, and the East Hill project constitutes "marital property" as defined in R.C. 3105.171(A)(3)(a). Marital property must be divided equally between the parties unless an equal division would be inequitable; in the latter case, the marital property must be divided equitably rather than equally. R.C.3105.171(C).
 {¶ 43} To divide marital property equitably, the trial court must first value it. See Allen v. Allen (1996), 109 Ohio App.3d 640, 642, citing Eisler v. Eisler (1985), 24 Ohio App.3d 151, 152, and Willis v.Willis (1984), 19 Ohio App.3d 45, 48. Generally, marital property is to be valued on the date of the marriage's termination, which is the date of the final hearing in the divorce proceedings, unless the trial court determines that use of that date would be inequitable; in the latter case, the court may select another date that it considers equitable. See R.C. 3105.171(A)(2)(a) and (b).
 {¶ 44} Generally, before a witness may testify as to his opinion on the value of property, the witness must be qualified as an expert.Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, paragraph one of the syllabus. Thus, the valuation of a business interest generally requires the opinion testimony of a qualified expert witness. See, generally, Webb v. Webb (June 28, 1996), Marion App. No. 9-96-6. However, as an exception to this general rule, the owner of the property is permitted to testify about the property's value without being qualified as an expert, because the owner is presumed to be familiar with the property from having purchased the property or otherwise "dealt" with it. Tokles Son, Inc., paragraph two of the syllabus.
 {¶ 45} The trial court has discretion to adopt the more persuasive of two or more evaluations presented. Briggs v. Briggs (Feb. 17, 1989), Geauga App. No. 1427. Whatever valuation the trial court chooses must be supported by competent, credible evidence. McCoy *Page 9 v. McCoy (1993), 91 Ohio App.3d 570, 575; Briggs.
 {¶ 46} In this case, approximately six months before the final divorce hearing, appellant asked the trial court to set the termination date of the marriage at December 31, 2003, for purposes of valuing the parties' marital interests in Moore Realtors, Highland Mortgage, and the East Hill project. Appellee countered by requesting that the termination date be set as the date of the final hearing, as provided for in R.C.3105.171(A)(2)(a).
 {¶ 47} About one month before the final hearing, the trial court issued an entry, rejecting the parties' proposed termination dates, and finding, instead, that the parties' "marital union" ended on November 30, 2003, i.e., the date of the parties' separation. The trial court instructed the parties to "prepare their cases in conformity" with that date. As a result of this ruling, the trial court plainly indicated its intention to value the parties' business interests as of November 30, 2003.
 {¶ 48} At the final divorce hearing, appellant presented the expert testimony of Douglas Michel, a Certified Public Accountant and a Certified Valuation Analyst. Michel testified that as of November 30, 2003, Moore Realtors had a "fair value" of $251,000, and that the parties' 50 percent interest in Highland Mortgage had a "fair value" of $228,500. Appellant testified that appellee had told her the East Hill project would net them $250,000 during the project's first phase.
 {¶ 49} Appellee did not present any expert witness on his behalf to talk about the value of either Moore Realtors or Highland Mortgage. Instead, he testified that in his opinion, Moore Realtors and Highland Mortgage were not worth anything at the time of the parties' separation on November 30, 2003. As to the value of the parties' interest in the East Hill project, appellee disputed appellant's testimony that he had once told her they would make $250,000 from their investment, but did acknowledge that as of November 30, 2003, he expected to make about $100,000 from that investment. *Page 10 
 {¶ 50} Appellant asserts that appellee did not provide any testimony on the value of Moore Realtors as of November 30, 2003. However, while appellee did not testify about this issue on direct examination, the issue was raised by appellant's counsel on cross-examination, at which point, appellee acknowledged that at the beginning of the proceedings, he had estimated Moore Realtors' value as being $75,000. Appellee explained that he had chosen that figure only because of his "ego" and because the attorney representing him at the time told him he had to list some value for the company; however, after reviewing his records, he no longer believed that Moore Realtors was worth anything at the time the parties separated and filed for divorce.
 {¶ 51} The trial court found that the value of Moore Realtors and Highland Mortgage was zero, with the companies' only remaining assets being appellee's "good will" and Moore Realtors' agents, who were under no obligation to remain with the company. The trial court also found, implicitly, that the parties' interest in the East Hill project had been reduced to a $30,000 promissory note, which the court ordered to be divided evenly between the parties.
 {¶ 52} A review of the evidence in this case demonstrates that the trial court acted within its discretion when it accepted appellee's opinion of the value of those companies over that of appellant's expert. See Briggs, Geauga App. No. 1427. Additionally, the evidence supports the trial court's finding that the only valuable assets that those companies possessed were appellee's goodwill and Moore Realtors' agents, who were under no obligation to stay with Moore Realtors.
 {¶ 53} Furthermore, appellee's business partner Drake testified that the "refinance boom" that occurred in this country in 2001 and 2002 "fueled and funded" Highland Mortgage's increased business during that time. Drake testified, however, that the value of Highland Mortgage began to diminish in the middle of 2003 when the refinance boom ended. Thus, there was some competent, credible evidence presented in this case to support the *Page 11 
trial court's finding that Moore Realtors and Highland Mortgage were not worth anything at the time of the parties' separation and, therefore, this court must not substitute its judgment for that of the trial court. Bisker, 69 Ohio St.3d at 609, 1994-Ohio-307.
 {¶ 54} It is clear that the trial court did not value the parties' interest in the East Hill project as of November 30, 2003. Appellee and Drake testified that as of November 2003, they expected the original four partners to net at least $100,000 each from the project. Thus, when the trial court implicitly found that the value of the parties' investment in the East Hill project had been reduced to the $30,000 promissory note, the court was using a valuation date different from the one it had established before the final divorce hearing.
 {¶ 55} However, it has been held that a trial court does not abuse its discretion in selecting different dates to value certain marital assets so long as the court sets forth its specific reasons for doing so, with those reasons having a basis in the evidence presented. DeWitt v.DeWitt, Marion App. No. 9-02-42, 2003-Ohio-851, ¶ 19.
 {¶ 56} In this case, the trial court did not specify its reasons for valuing the parties' interest in the East Hill project on a date different from its previously selected date for the termination of the marriage. Nevertheless, the trial court's reasons for doing so are apparent from the record. As appellee points out, the East Hill project was a "speculative investment with anticipated value" for all four of the project's original investors. However, when the call went out for additional investments, neither party was in a position to continue with the project. The trial court's decision cannot be deemed to have been arbitrary, unconscionable, or unreasonable.
 {¶ 57} Appellant's second, third, and fourth assignments of error are overruled.
 {¶ 58} Assignment of Error No. 5:
 {¶ 59} "THE TRIAL COURT ERRED IN ITS CALCULATION OF CHILD SUPPORT." *Page 12 
 {¶ 60} Assignment of Error No. 6:
 {¶ 61} "THE TRIAL COURT ERRED IN NOT AWARDING SPOUSAL SUPPORT TO WIFE."
 {¶ 62} Appellant's fifth and sixth assignments of error are interrelated and, therefore, we shall address them together.
 {¶ 63} Appellant argues that the trial court erred in not imputing annual income of $150,000 to appellee and then using that figure to calculate his child and spousal support obligations. We disagree with these arguments.
 {¶ 64} R.C. 3119.01(C)(11) permits a trial court to impute income to a parent who is voluntarily unemployed or voluntarily underemployed for the purpose of determining the parent's child support obligation. The income to be imputed by the trial court is the income the parent would have earned if fully employed as determined by the factors listed in R.C. 3119.01(C)(11)(a)(i)-(x). Those factors include the parent's prior employment experience and education, the availability of employment and the prevailing wage and salary levels in the geographic area in which the parent resides, whether there is evidence that the parent has the ability to earn the imputed income, and any other relevant factor. Id.
 {¶ 65} The statutory section on spousal support is less explicit on the issue of imputing income to a spouse who is voluntarily unemployed or voluntarily underemployed. Nevertheless, this court and others have approved a trial court's imputation of income for purposes of determining spousal support. See Rotte v. Rotte, Butler App. No. CA2004-10-249, 2005-Ohio-6269, citing Seaburn v. Seaburn, Stark App. No. 2004CA00343, 2005-Ohio-4722, ¶ 32.
 {¶ 66} R.C. 3105.18(C)(1) lists 14 factors that a trial court must consider in determining whether spousal support is appropriate and reasonable, including the "income" and "earning abilities" of each party. R.C. 3105.18(C)(1)(a) and (b). When considering the *Page 13 
relative earning abilities of the parties in connection with an award of spousal support, courts need not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money the person could have earned if he or she had made the effort. Rotte. Therefore, a court may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential. Id.
 {¶ 67} The determinations of whether a party is voluntarily unemployed or voluntarily underemployed, and the amount of income that should be imputed to him or her, if any, are factual determinations to be made by the trial court based on the circumstances of each particular case.Rotte, citing Rock v. Cabral (1993), 67 Ohio St.3d 108, 112. The trial court's determination on these issues shall not be disturbed absent an abuse of discretion. Id.
 {¶ 68} In this case, there was evidence presented showing that appellee had, in the past, listed many of his personal expenses as business expenses and, as a result, had understated his income. For example, in his original Affidavit of Income, Expenses and Financial Disclosure filed at the time of the initial divorce proceedings, appellee stated that his income was approximately $56,000. However, in that same document, he listed his monthly expenses as totaling about $12,000, which placed his annual expenses at about $144,000.
 {¶ 69} Nevertheless, the question of whether appellee was misrepresenting his current income was largely a matter for the trial court to resolve since the trial court was in the best position to observe appellee and assess his credibility. See, generally, Rogers v.Hill (1998), 124 Ohio App.3d 468, 470.
 {¶ 70} There was also evidence presented that appellee had sustained recent business losses, and the trial court made appellee "solely responsible for all unpaid federal and state taxes" and "any remaining business debt not discharged by the bankruptcy action." *Page 14 
In light of all the evidence presented, the trial court's decision not to impute income to appellee for purposes of determining his child and spousal support obligations was not an abuse of discretion.
 {¶ 71} Appellant's fifth and sixth assignments of error are overruled.
 {¶ 72} Judgment affirmed.
YOUNG, P.J., and BRESSLER, J., concur.
[1] The trial court further ordered appellant's one-half interest in the $30,000 promissory note to be setoff against appellee's one-half interest in the $34,000 worth of equity of the marital residence, with the remaining $2,000 of appellee's one-half share in the equity of the marital residence to be applied to his temporary child support arrearage. *Page 1