OPINION
{¶ 1} Plaintiff-appellant, Sharyn J. Brown, appeals the Madison County Court of Common Pleas' decision regarding property division and valuation, joint custody of the children's investment accounts, child and spousal support, and restoration of her maiden name. We reverse the trial court's decision.
 {¶ 2} On October 11, 1978, Sharyn and defendant-appellee, Darrell J. Brown, Jr., were married. During the marriage, Darrell completed his undergraduate degree *Page 2 
and then obtained his medical degree, while Sharyn worked full-time to support the family. After medical school and his residency, Darrell began working as a physician for several hospitals until he opened his own obstetrician/gynecological (OB/GYN) practice in New London, Ohio. Sharyn in turn worked part-time in Darrell's practice performing various office-related functions. The parties also had two children during their marriage.[1]
 {¶ 3} In 2003, the parties filed for divorce. After two days of trial, on October 28, 2004 and February 3, 2005, the magistrate issued a decision 30 months later on August 7, 2007. Sharyn received custody of the parties' minor child and $814.46 per month in child support with an effective date of January 23, 2006.[2] Sharyn was also awarded $1,000 per month in spousal support for 144 months. Both parties were named joint custodians of their children's investment accounts. Darrell received a few items of electronic equipment and a $2,000 credit for the remaining household goods. Additionally, the magistrate equally divided four investment accounts, debt on three credit cards, and the home equity loan balance between the parties. Finally, the magistrate valued Darrell's medical practice at $40,000, which was also equally divided between the parties.
 {¶ 4} Sharyn filed objections to the magistrate's decision, but they were overruled by the trial court in a single sentence entry issued on October 30, 2007. On December 5, 2007, using an entry form, the trial court adopted the magistrate's decision. Because the trial court provided no additional analysis, we must rely on the magistrate's *Page 3 
decision in addressing the assignments of error. The trial court filed the final decree of divorce on August 20, 2008. Sharyn filed an appeal raising six assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED BY NOT MAKING AN EQUITABLE DIVISION OF THE PARTIES['] MARITAL ASSETS AND DEBTS."
 {¶ 7} In her first assignment of error, Sharyn argues that the trial court erred in equally dividing, rather than equitably dividing, the parties' assets. In particular, she asserts that the trial court should not have equally split the investment accounts, credit card debt, or home equity debt between the parties based on the particular circumstances of this case. Sharyn also argues that the trial court should not have given Darrell a $2,000 household goods credit.
 {¶ 8} "A trial court has broad discretion in making divisions of property in domestic cases." Middendorf v. Middendorf,82 Ohio St.3d 397, 401, 1998-Ohio-403, citing Berish v. Berish (1982),69 Ohio St.2d 318. As such, "[a] trial court's decision will be upheld absent an abuse of discretion." Id., citing Holcomb v. Holcomb (1989),44 Ohio St.3d 128; Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295. "`Abuse of discretion' is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion." Id., citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case."Jefferies v. Stanzak (1999), 135 Ohio App.3d 176, 179, citing Booth v.Booth (1989), 44 Ohio St.3d 142, *Page 4 
144.
 {¶ 9} Pursuant to R.C. 3105.171(C)(1), "the division of marital property shall be equal." Only when equal division is determined to be inequitable can the trial court proceed from an equal division to an equitable division of marital property. R.C. 3105.171(C)(1). It is axiomatic that "[e]quitable need not mean equal." Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355. However, this does not mean that equal division can never be equitable. Instead, the trial court's decision is dependent on the facts and the circumstances of each case. Id.
 {¶ 10} In her first sub-issue, Sharyn argues that the trial court's $2,000 credit to equalize the household goods was not supported by the evidence because there was no testimony as to the value of the items which essentially made the trial court's valuation "pure speculation."
 {¶ 11} Prior to making any division of property, the trial court must determine what property is marital and what property is separate, and then determine the value of the marital property. R.C. 3105.171(B);Donovan v. Donovan (1996), 110 Ohio App.3d 615, 620-21. While the trial court has broad discretion in valuing property, this discretion is not unlimited. James v. James (1995), 101 Ohio App.3d 668, 681. This discretion, however, does extend to "developing] some measure of value."Willis v. Willis (1984), 19 Ohio App.3d 45, 48, citing Berish.
Nevertheless, "[t]he trial court is not privileged to omit valuation altogether." Id. at 48. "A party's failure to put on any evidence does not permit assigning an unknown as value." Id. A trial court commits reversible error if it makes a division of marital property and was not presented with any evidence of valuation of marital property and where it failed to assign a value in its decree. Wright v. *Page 5 Wright (Nov. 10, 1994), Hocking App. No. 94CA02, 1994 WL 649271, at *9, overruled on other grounds by Liming v. Liming, Athens App. No. 05CA3,2005-Ohio-2228.
 {¶ 12} In addition, "[i]t would be virtually impossible to achieve either an equal or an equitable division of marital property without valuing those assets." Id. at *8. More importantly, "[a]s a practical matter, for an appellate court to review a trial court's division of property * * * findings of value should be determined." Willis v.Willis (1984), 19 Ohio App.3d 45, 48.
 {¶ 13} Neither party submitted any evidence as to the value of the household goods, because they had decided to split those items between themselves. Since there was a complete lack of evidence as to value for those items, it was impossible for the trial court to order a $2,000 setoff for the household goods. Also, we are unable to determine whether the property division of household goods was equitable, as no findings of value were ever made. We must therefore reverse the trial court's decision regarding the $2,000 setoff.
 {¶ 14} Sharyn's second sub-issue argues that the trial court erred in equalizing the contents of the parties' four investment accounts. While each party received the accounts in their respective names, Darrell was given a setoff of $9,478.97 because his account only had $4,151 and the accounts given to Sharyn totaled $23,108.93. Sharyn contends it would have been equitable to award her the investment accounts, in her name, without a setoff.
 {¶ 15} "In dividing property in divorce proceedings, the trial court is required to classify assets as marital or nonmarital and then award each spouse his or her separate, nonmarital property." Peck v. Peck
(1994), 96 Ohio App.3d 731, 734. *Page 6 
Generally, "* * * the holding of title to property by one spouse individually * * * does not determine whether the property is marital property or separate property." R.C. 3105.171(H). Thus, "[t]he party [who] seek[s] to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Peck at 734. Otherwise, "`marital property is presumed to include all property acquired during the marriage or those assets produced or earned as a result of the parties' mutual efforts.'" Moro v. Moro (1990), 68 Ohio App.3d 630, 636, quotingAvis v. Avis (May 23, 1985), Cuyahoga App. No. 48832, 1985 WL 9027, at *6.
 {¶ 16} The record indicates there was only testimony as to the names on the accounts and the contents of the accounts. No testimony was offered to prove that the accounts should have been awarded to the parties separately. In other words, neither party testified that the accounts were acquired before marriage, by gift, bequest, devise or descent. R.C. 3105.171(A)(6)(a); Moro at 636. The magistrate correctly presumed the accounts to be marital and divided them equally which was well within its discretion.
 {¶ 17} In Sharyn's third sub-issue, she argues that the trial court should not have equally divided the parties' credit card debt between them. She contends that one of the cards had business related debt and was accounted for in the valuation of the business. In addition, Sharyn claims that the card she primarily used was utilized during the pendency of the case in lieu of child support. Therefore, she asserts that the debt on that card should be Darrell's sole responsibility. Finally, Sharyn argues that because she only earned a small percentage of the parties' income during the marriage, she should not now be assigned half of the parties' marital debt. *Page 7 
 {¶ 18} "In exercising [its] discretion, the [trial] court not only allocates and equitably divides the marital assets, but also provides for the payment of all marital obligations and debts." Minges v.Minges (Feb. 29, 1988), Butler App. No. CA87-06-085 at 4. See, also, R.C. 3105.171(F)(2) (because a trial court must consider both the assets and liabilities of both parties, dividing marital property requires the trial court to also divide marital debt). "[N]o accepted definition of marital debt has arisen from Ohio case law. In most states, a marital debt is any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." Ketchum v. Ketchum, Columbiana App. No. 2001 CO 60, 2003-Ohio-2559, ¶ 47, citing Turner, Equitable Distribution of Property (2 Ed. 1994, Supp. 2002) 455, Section 6.29. Because, "[a]ll debts are not necessarily marital debts * * * equity generally requires that the burden of nonmarital debts be placed upon the party responsible for them." Minges at 4. "Consequently, any property acquired as a result of a nonmarital debt belongs to the party who incurred the debt and is not subject to division." Id.
 {¶ 19} As noted previously, a party who seeks to have an asset classified as separate must trace the asset to separate property.Peck, 96 Ohio App.3d at 734. "[Fundamental fairness requires that the party seeking to have the court determine a debt as a separate liability of the other party must bear the burden of proof." Gibson v. Gibson
(Mar. 29, 1996), Clark App. No. 95-CA-87, 1996 WL 139780, at *6, accordPapas v. Papas (Dec. 17, 1997), Summit App. No. 18247, 1997 WL 795815, at *2; and Elliott v. Elliott, Ross App. No. 03CA2737, 2004-Ohio-3625, ¶ 19.
 {¶ 20} The magistrate did not specifically find that any of the credit card debt was marital. It appears, however, by splitting the amount of debt equally between the *Page 8 
parties, the magistrate considered it marital debt.
 {¶ 21} Sharyn testified that her credit card was primarily used because she was not receiving child support. However, Sharyn, Darrell and their child were all living in the marital home, for most of the proceedings, which resulted in an agreement to cancel Darrell's child support obligations. In addition, there was testimony that Darrell was paying some of the bills, including some of the debt on Sharyn's credit card. It is clear from the record that the charges on Sharyn's card occurred during the marriage, and should be considered part of the marital debt. It was within the magistrate's discretion to divide that debt equally between Sharyn and Darrell.
 {¶ 22} As to the other credit card, Sharyn presented testimony that one of the cards in Darrell's name was a "Platinum Plus for Business" MasterCard which was used in relation to his practice. Sharyn testified that the charges on that card were either billable expenses to patients, office related expenses, automobile expenses, continuing medical education expenses, finance charges, or miscellaneous expenses. Her testimony stemmed from the fact that she was responsible for categorizing the charges on the credit card statement, for the accountant, as part of her duties, for Darrell's practice. Because a large portion of the amounts were billable to patients, Sharyn argues that the debt on the card was taken into account when the practice was divided.
 {¶ 23} We are unable to determine whether the magistrate took this particular credit card debt into consideration when it valued the business because, as we will address in the second assignment of error, we are unable to properly review the magistrate's valuation of the practice. Therefore, we reverse this division of debt between the parties and remand this issue to the trial court for consideration in valuing *Page 9 
the practice.
 {¶ 24} Finally, Sharyn claims that it was inequitable for the trial court to award her half of the parties' debt when she only contributed a small portion to the parties' income. This argument is not without support. See Cardiff v. Cardiff, Jackson App. No. 06CA1, 2006-Ohio-6624, ¶ 4;Ballas v. Ballas, Mahoning App. No. 04 MA 60, 2004-Ohio-5128, ¶ 32;Sicilia v. Sicilia, Columbiana App. No. 01 CO 57, 2002-Ohio-6893, ¶ 12. However, in this instance we are guided by the principle espoused in Martin v. Martin (1985), 18 Ohio St.3d 292, 295, which said: "[w]hile a reviewing court in any domestic-relations appeal must be vigilant in ensuring that a lower court's determination is fair, equitable, and in accordance with law, an appellate court must refrain from the temptation of substituting its judgment for that of the trier-of-fact, unless the lower court's decision amounts to an abuse of discretion." Thus, even though there was a large income disparity between the parties, we cannot say that there was an abuse of discretion in the decision to divide the parties' debts equally.
 {¶ 25} In her fourth sub-issue, Sharyn argues that the trial court erred when it equally divided the home equity line of credit between the parties. Sharyn contends that at the time she filed for divorce, the debt on the line of credit was $15,000.[3] However, by the time the final hearing occurred, the debt on the line of credit increased to $59,000, based upon what Sharyn argues, was Darrell's "poor judgment and financial misconduct."[4] *Page 10 
 {¶ 26} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(3). As the trial court's decision on this issue is discretionary, we will not reverse it absent an abuse of that discretion. Pressler v. Pressler, Butler App. No. CA2004-03-068,2005-Ohio-1408, ¶ 23, citing Huener v. Huener (1996),110 Ohio App.3d 322, 326. The burden of proving financial misconduct for purposes of R.C. 3105.171(E)(3) rests with the complaining spouse. Hammond v.Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, 1995 WL 546903, at *3.
 {¶ 27} The record indicates that Darrell, without Sharyn's knowledge, prematurely withdrew approximately $72,000 from his retirement account in 2002. He used approximately $38,000 to pay off the mortgage on the marital home, and according to Sharyn, may have used $12,000 to pay off some bills. Without Sharyn's knowledge or consent, Darrell lost the remaining $22,000 speculating in the stock market. By withdrawing these retirement funds early, Darrell incurred substantial tax penalties. In order to pay these penalties, Darrell, with Sharyn's approval, obtained a home equity line of credit in the amount of $52,000. There was no testimony as to the amount of tax penalties owed, however the first statement shows checks written on the account totaled more than $48,000. The parties began to pay down the balance, presumably with marital funds, and by the time Sharyn filed for divorce, the balance was approximately $17,000. On the same day Sharyn filed for divorce, she also filed a motion requesting the court to restrain Darrell from encumbering marital property, disposing of marital *Page 11 
property, and incurring debt in her name. However, the requested restraining order was never issued.
 {¶ 28} By May of 2004, the home equity line of credit balance reached a low of $14,520.47. However, the following month an additional $26,998 worth of credit was used, bringing the balance up to $41,565.83. There was no testimony in the record to indicate why the balance more than doubled. By the time the parties made their first appearance before the magistrate, in October of 2004, the balance had increased to almost $50,000.
 {¶ 29} The magistrate found that Darrell's premature withdrawal of his retirement funds was a marital transaction that resulted in a loss. The magistrate stated that Darrell "did not commit fraud or conceal funds but obviously used poor judgment and did not handle his financial affairs prudently." The magistrate also found that any increase in the home equity line of credit, "resulted in a marital debt even though it may have been poor judgment or []as a result of poor work habits by [Darrell]."
 {¶ 30} The magistrate did not indicate that the increase in debt was due to financial misconduct. Instead, the magistrate merely characterized Darrell's conduct as poor and imprudent. Furthermore, Sharyn provided no additional evidence of financial misconduct other than the fact that Darrell improvidently used his retirement funds which effectively resulted in the home equity line of credit. We cannot substitute our judgment for that of the trial court, and as such are unable to say there was an abuse of discretion.
 {¶ 31} However, upon further review of the property division in this case, it appears as though the trial court intended to equally divide the property between the *Page 12 
parties, but actually resulted in making an unequal division. This constitutes an abuse of discretion where the trial court fails to offer a reason for making an unequal division of property.
 {¶ 32} If the trial court intends to make an equitable division of property, written findings of fact must be made pursuant to R.C. 3105.171(G). This requirement is especially important where the division results in an unequal distribution of property. Szerlip v. Szerlip
(1998), 129 Ohio App.3d 506, 512, appeal not allowed 84 Ohio St.3d 1447
(holding "any unequal distribution of property in a divorce proceeding requires the trial court to enter written findings of facts supporting its decision"). See, also, Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 97.
 {¶ 33} Property Division Per The Magistrate's Entry:[5]

 Sharyn Darrell
Household goods $4,000.00
Accounts $23,108.93 $4,151.00
Medical Practice $40,000.00
Social Security $101,449.33 $125,528.35
Credit Card Debit ($3,084.00) ($21,509.00)
 $125,474.26 $148,170.35

 {¶ 34} The net difference between Sharyn and Darrell's columns is:
 $148,170.35 -$125,474.26
$22,696.09 {¶ 35} Therefore, in order to equalize the property division, Darrell should have been ordered to pay half of the difference, or $11,348.04 to Sharyn in order to equalize the division of property, if equal division was intended. *Page 13 

 Sharyn Darrell
 $125,474.26 $148,170.35
+ $11,348.04 - $11,348.04
 $136,822.30 $136,822.31

 {¶ 36} Rather than having Darrell pay Sharyn to equalize the property division, if intended, the magistrate ordered the first $11,348.04 from the sale proceeds from the marital home to be paid to Sharyn, with the remainder being split equally between the parties. Assumingarguendo that the house was worth $139,961, based on the stipulated value less the home equity line of credit ($190,000 — $50,039), less the first $11,348.04 equals $128,612.96, or $64,306.48 each. That calculation results in an equitable, rather than equal, property division between the parties with Darrell retaining $11,348.05 more property than Sharyn.
 Sharyn Darrell
 $125,474.26 $148,170.35
+ $11,348.04 + $64,306.48
+ $64,306.48 $212,476.83
 $201,128.78

 {¶ 37} Although the trial court may have intended to equalize the parties assets and liabilities, in practice the division is unequal. As the trial court made no specific written findings of fact to explain its decision, we find the court abused its discretion. Therefore, we must reverse and remand the property division award in order for the trial court to specify why the division was unequal or equitable, rather than equal; or the court should equalize the division of property between the parties.
 {¶ 38} Based on the foregoing, we sustain Sharyn's first assignment of error.
 {¶ 39} Assignment of Error No. 2:
 {¶ 40} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED *Page 14 
IT[]S DISCRETION IN VALUING THE DEFENDANT/APPELLEE'S MEDICAL PRACTICE."
 {¶ 41} In her second assignment of error, Sharyn argues that the trial court's value for Darrell's medical practice was not supported by the evidence, namely because her expert testified that the practice had a value of $97,000.
 {¶ 42} As noted above, a trial court has broad discretion to make a determination as to the value of marital property. Donovan,110 Ohio App.3d at 621. Therefore, a trial court's decision regarding property valuation will not be disturbed on appeal absent an abuse of discretion. Id.
 {¶ 43} In Brickner v. Brickner, Butler App. No. CA2008-03-081,2009-Ohio-1164, we recently stated, "[b]ecause of its discretion, `[a] trial court has some latitude in the means it uses to determine the value of a marital asset.'" Id. at ¶ 11, quoting Kevdzija v.Kevdzija, 166 Ohio App.3d 276, 286, 2006-Ohio-1723, ¶ 23. "Thus,'[w]hen valuing a marital asset, a trial court is neither required to use a particular valuation method nor precluded from using any method.'" Id., quoting Gregory v. Kottman-Gregory, Madison App. Nos. CA2004-11-039, CA2004-11-041, 2005-Ohio-6558, ¶ 15.
 {¶ 44} In determining a valuation, the trial court must have sufficient evidence in order to justify and/or support the figure that it establishes. McCoy v. McCoy (1993), 91 Ohio App.3d 570, 575. Therefore, "[w]hatever valuation the trial court chooses must be supported by competent, credible evidence." Moore v. Moore, Clermont App. No. CA2006-09-066, 2007-Ohio-4355, ¶ 45, citing McCoy at 575. See, also, Walker v. Walker, Butler App. No. CA2001-07-159, 2002-Ohio-4374, ¶ 15-16; Hayden v. Hayden, Warren App. No. CA2003-08-081,2004-Ohio-6483, ¶ 29; Zerbe v. Zerbe, Hamilton App. *Page 15 
Nos. C-040035, C-040036, 2005-Ohio-1180, ¶ 39-42; Sowald and Morganstern, Domestic Relations Law (1997) 527, Sections 12.19 and 12.28.
 {¶ 45} In this case, Sharyn presented expert testimony by Keith Applegate a certified public accountant. Applegate valued the practice at approximately $97,000, based on his analysis of five years of accounts receivable for the practice, as well as his experience in accounting, valuing other businesses, and medical practice receivables.[6] Sharyn, who primarily did accounting for Darrell's practice, also testified that the business was worth $97,973 based upon the receivables. Darrell in turn testified that the receivables were only ten percent collectible; essentially placing a $9,700 value on his practice. The magistrate chose to value the business at $40,000, without providing any evidentiary basis for such a finding, other than it was "based upon accounts receivable and other testimony."
 {¶ 46} Upon consideration, we find that the basis of this determination, regarding the value of Darrell's medical practice, is not sufficiently detailed enough to enable us to determine whether the value assigned to the practice is not unreasonable, arbitrary, or unconscionable. Accordingly, Sharyn's second assignment of error is well-taken, to the extent that the matter must be remanded to the trial court to provide an evidentiary basis for the $40,000 valuation of Darrell's practice. See McCoy, 91 Ohio App.3d at 575.
 {¶ 47} Assignment of Error No. 3:
 {¶ 48} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED IT[]S DISCRETION IN NAMING THE PARTIES AS JOINT CUSTODIANS OF THE ACCOUNTS OF THE PARTIES['] CHILDREN." *Page 16 
 {¶ 49} In her third assignment of error, Sharyn argues that the trial court should not have named both her and Darrell as joint custodians of their children's investment accounts, because Darrell had been irresponsible with their personal investment accounts and because she has custody of their minor child. We cannot reach the merits of Sharyn's argument, however, as we find the trial court had no jurisdiction to order joint custody of the children's investment accounts.
 {¶ 50} "A custodial account held for the benefit of a child is neither marital [n]or separate property." Wilson v. Wilson (July 24, 1996), Wayne App. No. 95CA0089, 1996 WL 411631, at *5. Under the Ohio Transfers to Minors Act, R.C. 5814.01 et seq., any changes to a custodial account held on behalf of a minor, must be made by a probate court, rather than a domestic relations court. See Ramus v. Ramus (Aug. 19, 1976), Cuyahoga App. No. 34965, 1976 WL 191006, at *2-3; Yanky v. Yanky, Cuyahoga App. No. 83020, 2004-Ohio-489, ¶ 16.
 {¶ 51} Upon careful review of the record, we are unable to determine whether the accounts in question were all formed pursuant to the Ohio Transfers to Minors Act, making them subject to the probate court's jurisdiction; or whether they were simply bank accounts in the children's names, thus making them subject to the domestic relation's court jurisdiction. As such, we reverse the trial court's decision appointing both Sharyn and Darrell as joint custodians of their children's investment accounts and remand this issue to the trial court to determine whether the court has jurisdiction over the accounts, before it can order any modifications regarding custodianship of the accounts.
 {¶ 52} Assignment of Error No. 4: *Page 17 
 {¶ 53} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED IT[]S DISCRETION IN ITS AWARD OF SPOUSAL SUPPORT."
 {¶ 54} In her fourth assignment of error, Sharyn argues that the trial court erred in only awarding her $1,000 per month in spousal support. In particular, she asserts that the trial court failed to properly consider their relative incomes, her expenses, and other factors related to spousal support awards. In addition, she contends the trial court erred in not requiring Darrell to maintain a life insurance policy to cover her spousal support award.
 {¶ 55} A trial court is authorized to order an award of reasonable spousal support to either party in a divorce proceeding. R.C. 3105.18(B). Pursuant to R.C. 3105.18(C)(1), "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the * * * factors" set forth in R.C. 3105.18(C)(1). See, also, Kaechele, 35 Ohio St.3d at paragraph one of the syllabus. "These factors include each party's income, earning capacities, age, retirement benefits education, assets and liabilities, and physical, mental and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income capacity due to a party's fulfillment of marital responsibilities." Brickner,2009-Ohio-1164 at ¶ 21, citing R.C. 3105.18(C)(1)(a)-(m). "In addition, a trial court is free to consider any other factor it deems relevant and equitable." Id., citing R.C. 3105.18(C)(1)(n).
 {¶ 56} "The trial court is not required to comment on each factor. Instead, the *Page 18 
record need show only [sic] that the court considered each factor in making its spousal support award." Kreilick v. Kreilick,161 Ohio App.3d 682, 2005-Ohio-3041, ¶ 24, appeal not allowed 106 Ohio St.3d 1559,2005-Ohio-5531. However, "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law."Kaechele, paragraph two of the syllabus.
 {¶ 57} "The trial court has broad discretion in deciding support is needed based on the facts and circumstances of each case." Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67. "A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion." Id.
 {¶ 58} The primary focus of Sharyn's argument is in relation to the second factor within R.C. 3105.18 (C)(1), namely "[t]he relative earning abilities of the parties." In particular she argues that the trial court failed to impute income to Darrell either because he was voluntarily underemployed or because of his failure to live up to his earning potential. Sharyn also argues that the trial court failed to consider the likelihood of her continued employment in the marital business and her earning potential outside of the marital business.
 {¶ 59} "`When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a person could have earned if he made the effort.'" Rotte v. Rotte, Butler App. No. CA2004-10-249, 2005-Ohio-6269, ¶ 13, quoting Seaburn v.Seaburn, *Page 19 
Stark App. No. 2004CA00343, 2005-Ohio-4722, ¶ 32 (internal quotations omitted). See, also, Ebbinghaus v. Ebbinghaus, Geauga App. No. 2008-G-2853, 2009-Ohio-1000; Collette v. Collette (Jan. 24, 2001), Summit App. No. 20119, 2001 WL 57179; Petrusch v. Petrusch (Mar. 7, 1997), Montgomery App. No. 15960, 1997 WL 102014; Beekman v.Beekman (Aug. 15, 1991), Franklin App. No. 90AP-780, 1991 WL 160062. "Therefore, a court may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential." Moore v. Moore, Clermont App. No. CA2006-09-066, 2007-Ohio-4355, ¶ 66, citing Roffe at ¶ 13. See, also, R.C. 3119.01(C)(3) and (11).[7]
 {¶ 60} "Whether a party is `voluntarily unemployed or under-employed' is a factual determination to be made by the trial court based on the circumstances of each particular case." Rotte at ¶ 14, citing Rock v.Cabral (1993), 67 Ohio St.3d 108, 112. "Similarly, the amount of income imputed to a person found to be `voluntarily underemployed' is equally a question of fact, not to be disturbed, absent an abuse of discretion." Id.
 {¶ 61} Darrell is a licensed physician specializing as an OB/GYN with more than a decade of experience. The record indicates Darrell had a contract with Madison County Hospital with a guaranteed income of $250,000 from 1993 until 1997. His income *Page 20 
dropped drastically in 1996 when his privileges were suspended based on a dispute with the hospital. Darrell chose to remain in the area, rather than relocate, even though he was unable to find similar employment at four other local hospitals. Darrell did, however, obtain hospital privileges at Grant Medical Center in Columbus.
 {¶ 62} According to both Sharyn and Darrell's testimony, he received notices of possible job opportunities which could have returned him to his previous income level. Darrell refused, however, to leave the area. Sharyn's expert, Applegate, testified that nationally the income of a physician specializing as an OB/GYN averaged $220,000 to $230,000 based on medical industry statistics or $180,000 based on Department of Labor statistics. Applegate also noted that one of his clients in Clark County, who was a practitioner in a similar field, made slightly below the national average, but well above Darrell's salary. Despite this testimony, the magistrate stated that he was "going to have a hard time in my mind thus far finding him voluntarily underemployed." However, the magistrate also stated, "[t]he fact that you are getting letters of potential employment, heard evidence as to Doctor Brown's inability to practice in certain hospitals and I am surprised that wasn't tested, I guess at some point by him."
 {¶ 63} The magistrate stated that Darrell's income was "difficult to determine." The magistrate found that Darrell did have an annual income of $250,000 before he lost his privileges at Madison County Hospital. In addition, he made note of Darrell's gross and net incomes from 2000 to 2003. Finally, the magistrate found that Darrell "was taking a 7500 monthly draw in 2004 which generated 90K annual income." It is apparent from this entry that the magistrate chose not to impute income to Darrell by *Page 21 
finding Darrell "voluntarily underemployed, or otherwise not working up to his * * * full earning potential." Moore, 2007-Ohio-4355 at ¶ 66. We are not permitted to substitute our judgment for that of the trial court, and thus we cannot say that there was an abuse of discretion in this decision.
 {¶ 64} As to Sharyn's argument regarding her earning potential, we also find there was no abuse of discretion. Sharyn testified that she had never attempted to find alternate employment and stated her intention to continue to work part-time for Darrell should he continue to employ her in that capacity post-divorce. Darrell also testified that Sharyn could continue her employment at his practice. There was no way for the magistrate to speculate as to her future or continued employment, when no evidence was offered to the contrary.
 {¶ 65} Sharyn also appears to argue that the remaining factors were not considered. In her brief she states: the parties were married for 25 years before she filed for divorce; she supported Darrell while he was earning his medical degree; she only has a high school education, with no special skills or training; she devoted a considerable portion of the final 12 years of the parties' marriage to raising their children; the parties enjoyed a comfortable lifestyle during the marriage; her monthly expenses were $2,441 per month; and it was unconscionable to award 50 percent of the marital debt to her without making an award to equalize the incomes of the parties based on the disparity in their incomes.
 {¶ 66} In reviewing the magistrate's entry for spousal support factors, we find that the magistrate indicated Sharyn had an annual income of $15,000-$16,000, while Darrell's annual income was $90,000. The property settlement gave each party *Page 22 
approximately half of the marital assets. At the time of the trial, Sharyn was 46 and Darrell was 47. The magistrate's entry included Darrell and Sharyn's respective social security account information, with Sharyn receiving a credit to equalize the different amounts. At the time of the magistrate's decision, the parties had been married for 28 years. Although Sharyn received custody of the parties' 14-year-old minor child, there was nothing in the magistrate's entry indicating custody of the child would prevent Sharyn from working outside the home. However, we can presume the magistrate considered that factor as he wrote that Sharyn "[wa]s entitled to spousal support based upon the statutory factors and evidence presented (R.C.) 3105.18." See Mavity v.Mavity, Butler App. Nos. CA2000-12-244, CA2000-12-247, 2002-Ohio-556, 5, citing Babka v. Babka (1992), 83 Ohio App.3d 428, 435 (finding "[w]hen a trial court indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered").
 {¶ 67} In addition, the magistrate's entry noted the substantial gap in education between the parties because Darrell has a medical degree, while Sharyn only has a high school diploma. The magistrate also found that Sharyn worked while Darrell went to medical school. Because the magistrate divided the parties' assets and liabilities, a full accounting of each one was provided in the entry, demonstrating this factor was also considered. The entry did not mention the parties' physical, mental, and emotional condition; the parties' standard of living; Sharyn's need to acquire education, training, or job experience; the tax consequences of spousal support on each party; or any mention of lost income capacity because of marital responsibilities. However, we must again presume these factors were considered. Mavity at 5. Finally, we are unaware of any *Page 23 
additional relevant and equitable factors that the magistrate may have considered.
 {¶ 68} We believe that the magistrate considered all of the statutory spousal support factors, based on the fact that the magistrate clearly made reference to some of the factors and based on the presumption that all of the factors were considered. Therefore, there can be no abuse of discretion in this decision based on the totality of the circumstances.
 {¶ 69} Lastly, Sharyn argues that the trial court should have required Darrell to maintain a life insurance policy in an amount sufficient to cover his spousal support obligation because the magistrate's entry only stated that spousal support terminated upon her death or remarriage rather than his demise.
 {¶ 70} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise." R.C. 3105.18(B). This court has stated, "that for a spousal support order to continue after death, the order must `expressly provide' that spousal support shall continue beyond the obligor's death. Guenther v. Guenther, Butler App. No. CA2001-04-072, 2002-Ohio-376, 9, citing Woodrome v. Woodrome (Mar. 26, 2001), Butler App. No. CA2000-05-074, at 3. Furthermore, in Guentherwe vacated as inappropriate that part of the divorce decree which ordered the spouse in that case to maintain life insurance to secure his spousal support obligation. Id.
 {¶ 71} Because the spousal support order did not expressly provide for spousal support beyond Darrell's death, there was no error by the trial court in not ordering Darrell to maintain a life insurance policy for his spousal support obligations.
 {¶ 72} Our inquiry into the matter of spousal support, however, does not end *Page 24 
here.[8] We find that there was an abuse of discretion committed by the trial court when it failed to retain jurisdiction over modification of Sharyn's spousal support award. We also find that the trial court erred in failing to rule on Sharyn's motion for modification subsumed within her objections to the magistrate's decision.
 {¶ 73} R.C. 3105.18(E)(1) provides for a modification of the amount or terms of an award of spousal support where the trial court determines that the circumstances of either party have changed, and the divorce decree contains a provision "specifically authorizing" such a modification. The decision as to whether to include this provision has been found to be a matter within the trial court's discretion. SeeJohnson v. Johnson (1993), 88 Ohio App.3d 329, 331.
 {¶ 74} However, this court along with a majority of other Appellate Districts have held that a trial court abuses its discretion when it orders a spousal support award, for a definite period of time but of a relatively long duration, without reserving the authority to modify the award based upon a change in circumstances. Nori v. Nori (1989),58 Ohio App.3d 69, 72-73; Orwick v. Orwick, Jefferson App. No. 04JE14,2005-Ohio-5055, at ¶ 64; Babcock v. Babcock, Cuyahoga App. No. 82805,2004-Ohio-2859, at ¶ 43; Berthelot v. Berthelot, 154 Ohio App.3d 101,2003-Ohio-4519, at ¶ 55; Smith v. Smith (Jan. 12, 2001), Huron App. No. H-99-029, 2001 WL 27542, at *4; Straube v. Straube (Aug. 10, 2001), Lake App. No. 2000-L-074, 2001 WL 901080, at *5; Arthur v. Arthur (1998),130 Ohio App.3d 398, 410; Henninger v. Henninger (May 4, 1993), Darke App. No. 1303, 1993 WL 143765, at *5. But, see, Schalk v. Schalk, Seneca App. No. 13-07-13, 2008-Ohio-829, ¶ 39 (no abuse where a trial court did not retain jurisdiction over a six *Page 25 
year spousal support award).
 {¶ 75} We note that in Nori, the spousal support award was only ten years in duration and this court found the trial court had abused its discretion for failing to retain jurisdiction for that amount of time. Id. at 73. Therefore, it is only proper for us to find an abuse of discretion in this case, where Sharyn's spousal support award was for 144 months, or 12 years, and the trial court failed to retain jurisdiction to modify this award.
 {¶ 76} In addition, within Sharyn's objections to the magistrate's decision, we find she filed a motion for modification of spousal support. This is premised on the change of circumstances argument she made within her objections, asserting Darrell is now practicing in North Carolina and earning more than $200,000. As we have found that the trial court must retain jurisdiction over Sharyn's spousal support award, it must also address her modification request.
 {¶ 77} In conclusion, while there was no abuse of discretion in making the initial award of spousal support, the trial court abused its discretion in not retaining jurisdiction to modify the award and erred in not considering Sharyn's motion for modification. Therefore, this assignment of error is sustained to the extent that the matter must be reversed and remanded to the trial court to retain jurisdiction, and address Sharyn's motion to modify spousal support.
 {¶ 78} Assignment of Error No. 5:
 {¶ 79} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED IT[]S DISCRETION BY NOT RESTORING THE PLAINTIFF/APPELLANT TO HER FORMER NAME."
 {¶ 80} In her fifth assignment of error, Sharyn argues that the trial court erred by *Page 26 
failing to restore her former name.
 {¶ 81} Pursuant to R.C. 3105.16, "[w]hen a divorce is granted the court of common pleas shall, if the person so desires, restore any name that the person had before the marriage." (Emphasis added.) "An obvious reading of the foregoing statute clearly leads to the conclusion that if a person, who is granted a divorce, desires restoration to any name that the person had before marriage the court must grant the request."Hunt v. Hunt (Apr. 8, 1988), Belmont App. No. 87-B-46, 1988 WL 37972, at *1; accord Orwick v. Orwick, Jefferson App. No. 04 JE 14,2005-Ohio-5055, ¶ 45-48. See, also, Reisz v. Tusing (Feb. 19, 1986), Lorain App. No. 3884, 1986 WL 2476, at *2; Schneider v. Schneider (Mar. 23, 1978), Cuyahoga App. No. 37030, 1978 WL 217816, at *2-3.
 {¶ 82} Furthermore, "`* * * the use of the word shall in a statute must be construed as imposing a mandatory duty unless there appears a clear and unequivocal legislative intent that it receive a meaning other than its ordinary meaning * * *.'" Woodward v. Woodward (Dec. 29, 1982), Summit App. No. 10800, 1982 WL 5149, at *2, quoting State ex rel. Ewingv. Without a Stitch (1974), 37 Ohio St.2d 95, 103 (internal quotations omitted). "[A]n examination of R.C. 3105.16 fails to disclose any legislative intent to bestow the court with discretion, [as such] we must conclude that the statutory provision is mandatory upon the court." Id. at *2.
 {¶ 83} It is clear from the record that Sharyn failed to request this relief in her complaint, but later asked the trial court to restore her former name. Sharyn orally requested that her name be restored during the final hearing before the magistrate. Sharyn also made her request in writing through her proposed findings of fact and *Page 27 
conclusions of law, and in her objections to the magistrate's decision. Furthermore, in his response to the objections to the magistrate's decision, Darrell also agreed that Sharyn's name should be restored. We find, consistent with the mandate in R.C. 3105.16, the trial court erred when it failed to restore Sharyn's former name. Therefore, we sustain Sharyn's fifth assignment of error.
 {¶ 84} Assignment of Error No. 6:
 {¶ 85} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED IT[]S DISCRETION BY NOT BASING THE CHILD SUPPORT AWARD ON THE DEFENDANT/APPELLEE'S EARNING POTENTIAL."
 {¶ 86} In her sixth assignment of error, Sharyn argues that the trial court failed to take into account Darrell's earning potential when the court made its child support determination.
 {¶ 87} Prior to reaching the assignment of error, we must first address the fact that no child support worksheet was attached to the child support order. DeBrosse v. Debrosse (Mar. 20, 2000), Butler App. No. CA98-11-230 at 3. R.C. 3119.01 et seq., requires completion of a child support worksheet before a child support order or modification of a child support order is entered; and the trial court must include this document in the record. Marker v. Grimm (1992), 65 Ohio St.3d 139, 142. "This requirement is mandatory and must be followed literally and technically in all material respects." Varner v. Varner,170 Ohio App.3d 448, 2007-Ohio-675, ¶ 8, citing Marker at 142. Also, "[t]he trial court [must] follow this requirement in order to ensure that its order is subject to meaningful appellate review." Id. Therefore, the trial court's failure to attach the child support worksheet to the child support order constitutes sufficient *Page 28 
grounds for reversal and remand of this matter. See Marker at 143-144. However, for the sake of judicial expediency, we will briefly address Sharyn's assignment of error.
 {¶ 88} "The trial court possesses considerable discretion in child support matters." Murray v. Murray (1999), 128 Ohio App.3d 662, 666. "The decision of the trial court will be reversed only if it is the product of an abuse of discretion. Id., citing Pauly v. Pauly,80 Ohio St.3d 386, 390, 1997-Ohio-105.
 {¶ 89} Sharyn's argument is essentially identical to her failure to impute income argument detailed in her fourth assignment of error. As we previously found, we cannot substitute our judgment for that of the trial court in this matter. Therefore, we cannot say there was an abuse of discretion in failing to find Darrell was "voluntarily underemployed, or otherwise not working up to his * * * full earning potential."Moore, 2007-Ohio-4355 at ¶ 66.
 {¶ 90} However, as noted above, we find this assignment of error well-taken to the extent that we must reverse the award of child support and remand this matter to the trial court to complete a child support worksheet.
 {¶ 91} Judgment reversed and remanded for further proceedings consistent with this opinion and in compliance with the law.
YOUNG, J., concurs.
BRESSLER, P.J., concurs in part and dissents in part.
[1] One child, born April 19, 1985, was emancipated at the time the parties filed for divorce, while the parties' other child, born November 21, 1992, was still a minor and under the trial court's jurisdiction.
[2] From November 1, 2003 to February 17, 2004, Darrell was responsible for $1,089 per month in child support payments. No child support payments were ordered between February 17, 2004 and January 23, 2006.
[3] According to the account statements filed as exhibits, the balance of the debt between September 16, 2003 and October 15, 2003 was $17,003.48.
[4] According to the account statements, the debt was $49,863.36 on October 15, 2004, but increased an additional $175.93, by November 15, 2004, because of finance charges. Pursuant to the agreement with Huntington National Bank, the maximum loan amount on the line of credit was only $52,000.
[5] Although these numbers will change, based on our decision regarding the household goods, credit card debt and practice valuation, we have used the original amounts to illustrate the unequal division of property the magistrate made in his entry.
[6] Applegate primarily relied on the accounts receivables in providing his opinion regarding the value of the practice because the other assets, namely equipment, were not really valuable based on their age. No testimony was provided by either party related to "goodwill."
[7] {¶ a} R.C. 3119.01(C)(3) includes within its definition of a "`court support order' * * * an order for the support of a spouse or former spouse issued pursuant to * * * section 3105.18 * * * of the Revised Code."
{¶ b} Under R.C. 3119.01(C)(11), "`potential income' means * * * the following for a parent who the court pursuant to a court support order * * * determines is voluntarily unemployed or voluntarily underemployed: (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria: (i) The parent's prior employment experience; (ii) The parent's education; (iii) The parent's physical and mental disabilities, if any; (iv) The availability of employment in the geographic area in which the parent resides; (v) The prevailing wage and salary levels in the geographic area in which the parent resides; (vi) The parent's special skills and training; (vii) Whether there is evidence that the parent has the ability to earn the imputed income; (viii) The age and special needs of the child for whom child support is being calculated under this section; (ix) The parent's increased earning capacity because of experience; (x) Any other relevant factor."
[8] Although this issue was not brought up by Sharyn, "[w]here * * * the parties fail to raise a jurisdictional issue on appeal, an appellate court must raise it sua sponte." Foster v. Wickliffe,175 Ohio App.3d 526, 549, 2007-Ohio-7132, ¶ 106.